Ex parte Robert G. STRINGER, Relator.

No. 16839.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 24, 1976.

Rehearing Denied Jan. 20, 1977.

Murray L. Lieberman, Houston, for relator.

James H. Campbell, Houston, for respondent.

COLEMAN, Chief Justice.

## MAJORITY OPINION

This is a petition for writ of habeas corpus, an original action filed in this court. The Relator will be ordered discharged from the custody of the Sheriff of Harris County, Texas.

On July 12, 1976, Patsy and Robert Stringer were divorced. In the divorce decree the trial court found that the defendant had fraudulently deposited the sum of $11,000.00 in a savings and loan association in his mother's name. The decree ordered Robert Stringer to "obtain said $11,000.00 and put it in Patsy Ray Stringer's name in lieu of child support . . . ."

Patsy Stringer instituted a contempt proceeding and on October 28, 1976, Robert G. Stringer was found to be in contempt of court "by reason of his failure and refusal to place the aforementioned sum of $11,-000.00 in the name of Patsy Ray Stringer" and his punishment for such contempt was fixed at confinement in the county jail of Harris County, Texas, for a period of 150 days.

A petition for writ of habeas corpus was filed with this court wherein the Relator, Robert G. Stringer, complains that the order committing him to jail is void because (1) "the order under which the hearing was conducted and the commitment issued is vague and nonspecific . . . " (2) "the Relator, over objection, was compelled to answer questions relative to his behavior which made the basis for his commitment, when said testimony was obtained in disregard of his constitutional privilege against self-incrimination."

A transcript of the proceedings in the trial court at the contempt hearing reveals that the first witness called to testify was

Robert G. Stringer. His attorney promptly objected to his being called as a witness and to his being sworn in as a witness on the ground that the testimony which he would be required to give might tend to incriminate him in violation of his rights under the 5th Amendment to the Constitution of the United States of America. This objection was overruled and petitioner was sworn as a witness. Thereafter the same objection was made to various questions put to Mr. Stringer. On each occasion the objection was overruled and the Relator was compelled to answer.

The principal questions arising in this case were considered by the Supreme Court of Texas in *Ex Parte Werblud*, 536 S.W.2d 542 (1976). In *Ex Parte Werblud* the court stated:

"The purpose of civil contempt is remedial and coercive in nature. A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey some order of the court where such obedience will benefit an opposing litigant. Imprisonment is conditional upon obedience and therefore the civil contemnor 'carries the keys of [his] prison in [his] own pocket.' . . . In other words, it is civil contempt when one 'may procure his release by compliance with the provisions of the order of the court.' *Ex Parte Hosken*, 480 S.W.2d 18 (Tex.Civ.App.—Beaumont 1972). This is the settled rule in Texas. *Ex parte De Wees*, 146 Tex. 564, 210 S.W.2d 145, 147 (1948).

"Criminal contempt on the other hand is punitive in nature. The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act which affronted the dignity and authority of the court . . . This rule was well expressed in *Ex Parte Hosken* at 23:

"'Where the primary purpose of the proceeding is to vindicate public authority, the proceeding is usually denominated criminal. The action is punitive in nature. . . . Ordinarily, the punishment is fixed and definite and no subse-quent voluntary compliance on the part of the defendant can enable him to avoid punishment for his past acts.'"

In our case the testimony of Robert G. Stringer at the trial was that he had spent the $11,000.00 and was no longer able to comply with the order of the court. The penalty assessed against Mr. Stringer was imprisonment for a term of 150 days. No procedure was set out in the judgment by which Mr. Stringer could purge himself. The penalty is punitive rather than coercive.

In *Ex Parte Werblud* the court said:

"The state called Werblud as its first witness and Werblud's attorney objected to this procedure on the ground that it violated his client's privilege against self-incrimination. The court of civil appeals overruled the objection and Werblud was questioned extensively by the state concerning his knowledge of and control over the rendering plant operations. Many constitutional rights are accorded criminal contemnors, including the privilege against self-incrimination."

Thereafter the court held that the defendant in a criminal case has the privilege of refusing to give any testimony in the case and that it is universally held that the defendant may refuse to be sworn at all. The majority opinion concludes:

"Werblud was charged with criminal contempt and his attorney correctly asserted his client's privilege against self-incrimination as a reason that he should not have been sworn and compelled to testify at all."

Here we have a defendant who is charged with criminal contempt of court and has objected to being called and sworn as a witness, and thereafter, to being required to answer specific questions. In each instance Mr. Stringer's attorney correctly asserted his client's privilege against self-incrimination. Mr. Stringer should not have been sworn and compelled to testify once he had asserted his privilege against self-incrimination. The order of commitment is void and Relator must be discharged from custody.

We call attention to a quotation from *Ex Parte Hosken*, 480 S.W.2d 18 (Tex.Civ.App. —Beaumont 1972), reading:

"The guilt or innocence of Relator is not brought into question by this habeas corpus proceeding—only the legality of his detention is relevant. *Gilbert v. State*, 437 S.W.2d 444, 447 (Tex.Civ.App. —Houston, 14th Dist. 1969, error ref. n. r. e.). Consequently, our action discharging Relator from custody under the order herein mentioned is without prejudice to the right of the court to try the issue of contempt in a proceeding conducted in accordance with law."

The Relator is discharged from custody under the order of commitment dated the 28th day of October, 1976, in Cause No. 1,057,687, styled *Patsy Ray Stringer v. Robert Gerald Stringer*, in the Court of Domestic Relations No. 5, Harris County, Texas, Associate Justice Peden dissenting.

PEDEN, Justice, dissenting.

I respectfully dissent.

We have not been furnished a copy of the affidavit of contempt filed by the complainant, Mrs. Patsy Ray Stringer. Therefore, when the Relator was ordered sworn as a witness (over his attorney's invoking of the privilege against self-incrimination) we cannot say the trial judge was on notice that the proceeding was one in criminal contempt; that is, one whose primary purpose was to vindicate public authority rather than to obtain compliance with the court's prior order.

Once the trial judge decided to issue a punitive order of commitment rather than a coercive one, the punishment indicates that the contempt was criminal, as distinguished from civil, in nature. I would presume that at this point in the non-jury hearing the trial judge disregarded all inadmissible testimony. There is sufficient testimony from other witnesses as to the Relator's actions to support the trial judge's order.

I would not declare the commitment order void.

ON MOTION FOR REHEARING

COLEMAN, Chief Justice.

MAJORITY OPINION

A motion for rehearing in the above captioned original proceeding has been filed, and in connection therewith a certified copy of the judgment entered in the trial court. The judgment differs from the commitment order in that it provides for confinement for 150 days, "at which time he shall be released, or he may purge himself of such contempt by putting the sum of $11,000.00 which he obtained from Surety Savings pursuant to the aforementioned Order of the Court, into the name of Patsy Ray Stringer at the said Surety Savings (River Oaks) in lieu of child support."

Since the judgment entered by the trial court provided a method by which Relator could purge himself of contempt without suffering any punishment, the order was purely coercive, and was the type of order which ordinarily would be entered as sentence in a civil contempt proceeding.

It has long been the law in this State that witnesses in a purely civil proceeding may claim their constitutional privilege against self incrimination. *Dendy v. Wilson*, 142 Tex. 460, 179 S.W.2d 269 (1944).

In *Dendy v. Wilson*, supra, the Supreme Court of Texas held that a proceeding to declare a child a delinquent was a civil action. The court also applied the settled rule that a witness cannot be compelled to give evidence that will tend either directly or indirectly to incriminate himself, either in a civil case or in a criminal case.

It is a settled rule that contempt proceedings are criminal in their nature whether they grow out of criminal or civil actions, and the proceeding should conform as nearly as practicable to those in criminal cases. *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824 (1960).

In an original action to secure the release of one confined in jail under the judgment of a district court for failing to comply with a support order, the Supreme Court in *Ex*

*Parte Davis,* 161 Tex. 561, 344 S.W.2d 153 (1961), stated:

"The proceeding is unlike a civil suit. The person charged may not ignore the show cause order as he might ignore citation in a civil suit. He is commanded by the court to appear, and if he ignores the command he may be brought in under a capias. Moreover, one of the purposes of the hearing is to determine whether penal sanctions will be imposed against him; a fine may be imposed or he may be committed to jail, or both penalties may be inflicted. Article 1911, V.A.C.S. In addition, his imprisonment may be continued until he has purged himself of the contempt . . . The usual condition in this type of case with which the contemner must comply in order to purge himself is the payment of a fixed sum of money, within his ability to pay, representing cumulated arrearages of support payments. The hearing has some of the incidents of a trial for crime and is quasi-criminal in nature . . ."

In *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972), it was held that the privilege against self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; . . ."

It has been pointed out that in this case the attorney for Relator claimed for Relator his privilege against self-incrimination and objected to the order of the trial court that Relator be sworn as a witness. It was settled in *Ex Parte Werblud,* 536 S.W.2d 542 (Tex.1976), that one charged with criminal contempt cannot be compelled to be sworn as a witness where his privilege against self-incrimination is asserted by his attorney. The Supreme Court recognized that numerous cases had been cited to them for the proposition that the privilege against self-incrimination is personal to a witness and must be claimed by the witness himself. One of the cases cited was *Meyer v. Tunks,* 360 S.W.2d 518 (Tex.1962). This was an original petition for mandamus to require the district judge to revoke his or-

der overruling the motion of the petitioner to quash the State's application to take petitioner's oral deposition in a suit for removal of the petitioner from the office of sheriff. The court held:

"The gist of Art. 1, § 10 of the State Constitution is the same as that of the Fifth Amendment to the United States Constitution, namely, that the defendant in a criminal case shall not be compelled to give evidence against himself. The protection thus afforded is not against the propounding of the question but is the right to refuse to answer if he claims that privilege."

*Meyer v. Tunks,* supra, clearly stands for the proposition that a removal cause is a civil action and is to be conducted according to the rules of civil procedure, and that the State Constitution does not exempt the officer from being examined as an adverse witness.

A strong dissenting opinion was written in *Ex Parte Werblud* protesting the discharge of the relator because the only reason for his discharge was that he refused to take the stand as a witness. *Ex Parte Butler,* 522 S.W.2d 196 (Tex.1975), was cited for the proposition that in a strictly civil action it was proper for the State to call the relator as a witness or to take his deposition, citing as authority *Meyer v. Tunks,* supra. However, the opinion in *Ex Parte Butler* does not reveal that the petitioner claimed his privilege and refused to be sworn as a witness. It does reveal that he declined to answer a question on the ground that the answer might tend to incriminate him, and the Supreme Court sustained his contention and ordered him released.

■ In the usual contempt action arising out of the violation of an order entered in a civil action, the judge is authorized to enter either a coercive order or a punitive order, or an order which is both coercive and punitive. Under such circumstances the nature of the order entered at the conclusion of the trial will not be determinative of the question whether the proceeding is for civil contempt rather than criminal contempt. The decision in *Ex Parte Werblud,* therefore

requires that we hold that the trial court erred in requiring Relator to be sworn as a witness.

A different question would have been presented had the trial court entered an order granting immunity to Relator for prosecution on the criminal contempt aspect of this proceeding before requiring him to be sworn as a witness.

The question has arisen as to whether in this proceeding the error of the trial court in requiring the Relator to be sworn as a witness and to testify to matters which were incriminating requires the further holding that the judgment entered by the trial court is void.

The attorney for the Relator's former wife testified that Relator told him that he had the money and would pay it to his wife if she would meet him without the attorney being present. Patsy Ray Stringer testified that the money had not been deposited in her name. Before this testimony was given, however, Mr. Stringer had testified over the objection of his attorney on the ground of privilege that he had taken the money out of the bank and tried to put it in his wife's name but that he was unable to do so because she was not there to sign the necessary papers. In response to a question by the court the witness also testified that he would be willing to comply with the court's order if he had the money but that he did not have the money. At that time the court made this remark: "You are telling me then that the $11,000.00 that existed on August 12th is now gone also; is that true, sir?" to which the witness answered, "Yes, maam." The court then stated, "Let's proceed with this hearing." Over objections the witness was then required to testify as to what he did with the money. His answer was that he spent it on a trip to California, Arkansas and New Mexico. He testified that he had "a few parties." He testified that he took his brother with him and had parties in El Paso, Los Angeles, Hollywood, and Nuevo Laredo. He stated that he spent the money "on having a good time." He stated that he spent the $11,000.00 in about one month. He further testified that at the time of the hearing he had $1,158.06, and that that was all the money that he had left out of the $26,000.00 he received in a settlement of a lawsuit. He also testified that he had a home and a truck which was awarded him by the divorce decree.

The Relator was also required to testify with regard to another alleged violation of the trial court's order requiring him to transfer the title to a certain automobile to Patsy Ray Stringer and he admitted that the title to the car had not been transferred.

The judgment of the trial court recited: "Robert Gerald Stringer did obtain said $11,000.00, but did not place same in the name of Patsy Ray Stringer and the Court finds that such action on the part of Respondent was wilful and deliberate and constituted a failure to obey this Court's prior order . . ."

The trial court then "ORDERED, ADJUDGED and DECREED that the said Robert Gerald Stringer is guilty of contempt of this Court by reason of the act aforesaid, and that the said Robert Gerald Stringer as punishment for said contempt shall be confined . . ."

Relator's testimony was clearly sufficient to convict him of deliberate and wilful disobedience to a lawful order of the trial court. Relator's attorney could not comfortably argue, in view of the testimony of his client and the repeated rulings of the trial judge, that the evidence was too weak to support a finding that Relator was able to or did withdraw the $11,000.00 from his mother's account in a savings and loan association as charged.

Neither could he in good conscience argue for a light sentence in view of the testimony of his client that he spent the money on a pleasure trip, presumably to avoid paying it to his wife for the support of his child. Relator was prejudiced by the ruling of the trial court.

■ A finding of prejudice is not required to support our holding that the order holding Relator for contempt is void. The failure to accord a defendant in a criminal

contempt proceeding his constitutional privilege against self-incrimination renders the subsequent imposition of a penalty void and subject to collateral attack. *Ex Parte Taylor,* 484 S.W.2d 748 (Tex.Cr.App.1972).

In *Bloom v. State of Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), the Supreme Court of the United States held that dispensing with the jury in the trial of contempts subject to severe punishment represented an unacceptable construction of the Constitution. The court recognized that a jury trial was not required in a petit offense and that criminal contempt is a petit offense unless the punishment makes it a serious one. In the course of the opinion, however, the court said:

> "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both . . . Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcements of their mandates."

The court further stated:

> "It is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and he cannot be compelled to testify against himself."

The district courts of this State are authorized by Article 1911a to enforce its lawful orders by punishing one guilty of contempt by a fine of not more than $500.00, or by confinement in the county jail for not more than six months, or both. Section 3 of said Act provides: "Nothing in this Act affects the court's power to confine the contemner in order to compel him to obey a court order." The limitation of the punishment which the district court is authorized to impose for contempt under established law constitutes an alleged contempt a petit offense. While not all procedural rights constitutionally protected in the trial of a serious criminal offense are accorded the defendant charged with a petit offense, the privilege against self-incrimination is available to one charged with a petit offense. Article 1, Section 10, Constitution of the State of Texas; *Ex Parte Werblud,* supra.

The motion for rehearing is overruled, Associate Justice PEDEN, concurring.

## ON MOTION FOR REHEARING

PEDEN, Justice, concurring.

I concur in the result.

"The Supreme Court has had many occasions to emphasize the importance of the distinction between a proceeding in civil contempt and one in criminal contempt. Proceedings in civil contempt are between the original parties and are instituted and tried as a part of the main cause. Though such proceedings are 'nominally those of contempt,' the real purpose of the court order is purely remedial—to coerce obedience to a decree passed in complainant's favor, or to compensate complainant for loss caused by respondent's disobedience of such a decree.

" . . .

"The respondent is entitled to due notice of the nature of the proceeding against him—whether of criminal or civil contempt. If respondent is answering a charge of criminal contempt, he 'is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself.' " (citations omitted) *Parker v. United States,* 153 F.2d 66 (1946), 163 A.L.R. 379.

Where the contempt proceeding is considered to be civil in nature, a constitutional provision declaring that a person is not to be compelled to testify against himself has been held not to apply. 17 Am.Jur.2d 36, Contempt § 32.

Under the usual notice given to a respondent in Texas contempt cases and under the provisions of Article 1911a, the trial judge may issue, after a hearing, either a punitive or a coercive order, or both. It appears that most of the questions asked the re-

spondent in this case concerned his ability to comply with the court's earlier order. The others did not inquire into any criminal act, so by answering them the relator would only have subjected himself to punishment by a punitive order in the contempt matter then on trial. I agree with the majority's statement that had the trial judge granted the relator immunity from a punitive order a different question would be presented.