**Ex parte Seferino TREVINO, Relator.**

No. 04–83–00591–CV.

Court of Appeals of Texas, San Antonio.

Feb. 8, 1984.

---

Ed Kidwell, San Antonio, for relator.

Edith Smith, Maria Larson, Texas Department of Human Resources, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and REEVES, JJ.

## OPINION

ON APPLICATION FOR WRIT OF HABEAS CORPUS

PER CURIAM.

Relator, Seferino Trevino, brought this original habeas corpus proceeding after he was found to be in contempt of court for violating a provision of a divorce decree requiring the payment of child support. Relator alleges the contempt order is invalid because he was denied due process of law in that no show cause order was issued nor was an adversary hearing conducted to determine whether or not he was in compliance with the support order.

The divorce decree was entered on May 16, 1969 and contained an order that relator pay one hundred and twenty-five dollars ($125.00) on the 5th day of each month for support of three minor children. Payment was to be made to Mary N. Trevino through the Bexar County Child Support Office. The divorce decree contained no reference to the Texas Department of Human Resources.

On February 4, 1982, an order was entered finding that the Texas Department of Human Resources was no longer entitled to reimbursement for current support because Mary N. Trevino was no longer an Aid to Families with Dependent Children (AFDC) grantee and that relator pay sixty-two dollars and fifty cents ($62.50) on the 5th and 20th days of each month for child support to Mary N. Trevino. This order also recites, incorrectly, that the divorce decree had ordered relator to make all payments payable to the Texas Department of Human Resources through the Bexar County Child Support Office. This order further found relator to be in arrears of $9,610.00. Relator was then ordered to continue to pay as ordered on August 3, 1981, thirty-seven dollars and fifty cents ($37.50) on the 5th and 20th days of each month, payable to the Texas Department of Human Resources through the Bexar County Child Support Office. These payments were to continue until the Texas Department of Human Resources had been fully reimbursed for all benefits provided for the children or until said arrears were fully liquidated.

On March 21, 1983, relator was found in contempt of court for violating the court order of support contained in the May 16, 1969 divorce decree. This action was based upon affidavit and complaint of the Texas Department of Human Resources. As was noted earlier, the divorce decree made no reference at all to any payments having to be made payable to the Texas Department of Human Resources. Relator did not appear. He was ordered attached and committed to jail for 17 days, but not to exceed 6 months, and for such time thereafter until the arrears, now totalling $17,770.00, were fully paid. No mention was made in this order regarding payments to Mary N. Trevino.

On June 22, 1983, another order was entered. This order referred back to the

March 21st order. It recited that relator was ordered confined for 17 days and until relator paid arrears of $3,775.00. It further stated that relator had been in jail seven days and had paid $250.00 on the arrears. The court further found that the Texas Department of Human Resources had been providing $164.00 per month toward support of the children. The court then ordered relator released from jail. Relator was further ordered to make payments of twenty dollars ($20.00) on the 5th and 20th days of each month, payable to the Texas Department of Human Resources, until the arrears of $3,525.00 were liquidated. Relator was also ordered to comply with the order of February 4, 1982 with payments made payable to Mary N. Trevino. The last portion of this order required relator to appear in court on August 31, 1981 for the purpose of reviewing relator's compliance with the instant order.

■ Finally, on September 13, 1983, the order, of which relator now complains, was entered. This order recites that relator was duly cited on a show cause order for violating the child support provisions of the May 16, 1969 divorce decree and that relator did not appear but wholly made default. After hearing evidence, the court found relator in contempt of court. Relator was ordered attached, assessed a fine of $100.00, committed to jail for six months, and for such time thereafter until the arrears of $3,525.00 were fully paid.[1]

Historically, contempt has been classified as either civil or criminal. Included within the civil or criminal classification, contempt was further delineated as being direct or constructive. The classification of contempt, as either civil or criminal and direct or constructive, has been a frequent topic of legal discussion. *See generally Ex*

*parte Werblud,* 536 S.W.2d 542 (Tex.1976) and authorities cited therein.

■ In *Ex parte Wilson,* 559 S.W.2d 698, 699 (Tex.Civ.App.—Austin 1977, no writ) the classification of contempt was briefly summarized as follows:

The purpose of civil contempt is remedial and coercive in nature. A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey some order of the court where such obedience will benefit an opposing litigant. Imprisonment is conditional upon obedience and therefore the civil contemnor carries the keys of [his] prison in [his] own pocket. *Ex parte Werblud,* 536 S.W.2d 542, 545 (Tex.1976); accord, *Ex parte Hosken,* 480 S.W.2d 18, 23 (Tex.Civ.App.1972).

Criminal contempt on the other hand is punitive in nature. The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act which affronted the dignity and authority of the court. *Ex parte Werblud, supra.*

A direct contempt occurs within the presence of the court; a constructive contempt outside the presence of the court. *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406 (1928).

Additionally, it has been stated that in a contempt action arising out of the violation of an order entered in a civil action, the court is authorized to enter either a coercive order or a punitive order, or an order which is both coercive and punitive. "Under such circumstances the nature of the order entered at the conclusion of the trial will not be determinative of the question whether the proceeding is for civil contempt rather than criminal contempt." *Ex*

1. We have deliberately described the various orders entered in this cause as they appear in the record before us. The errors and inconsistencies contained in these orders are obvious. We encourage the bench and bar to insure that when an original order is to be modified or altered by a subsequent order, the latter order should carefully and correctly refer back to the original order specifically delineating what terms, conditions, and corresponding rights and duties of the parties are being modified or altered. The subsequent order should then specifically delineate the new terms, conditions, and corresponding rights and duties being effectuated in clear and unambiguous language. This same procedure should be utilized for any and all subsequent orders that may be entered.

*parte Stringer*, 546 S.W.2d 837, 841 (Tex. Civ.App.—Houston [1st Dist.] 1976, no writ) (On Motion for Rehearing). It is also well settled that in Texas, contempt proceedings have been characterized as quasi-criminal proceedings which should conform as nearly as practicable to those in criminal cases. *Ex parte Johnson*, 654 S.W.2d 415 (Tex.1983) and cases cited therein.

■ It is clear from the order entered in the instant cause against relator that it is a constructive contempt having to do with the failure of relator, outside the presence of the court, to obey the court's order requiring the payment of child support. It is also clear that the contempt order, assessing a $100.00 fine and confinement in jail for six months AND confinement for such time thereafter until the arrears of $3,525.00 are fully paid, is both punitive AND coercive in nature. (Emphasis added.)

In *Ex parte Johnson, supra,* the relator, although cited to attend, failed to appear at the contempt hearing. The trial court proceeded to hear evidence in the relator's absence. At the conclusion of the hearing the trial court found relator in contempt for violating a court order, occurring outside the court's presence, and ordered relator committed to jail for thirty days. Our Supreme Court held this to be a case of constructive criminal contempt. The Court further held that the right to be present at trial and confront witnesses, a constitutionally guaranteed due process right afforded criminal defendants, was fully applicable to a relator in a case of constructive criminal contempt. Since there was no showing Johnson had waived this right, the Supreme Court ordered Johnson discharged.

While it is clear from *Ex parte Johnson, supra,* that a contemnor is constitutionally guaranteed criminal due process requirements in a purely constructive criminal contempt, it is not clear if such criminal due process requirements must be met in a purely civil constructive contempt. That is, if Johnson had been confined only until he complied with the court's order, thus possessing the keys to his own freedom, would

criminal due process requirements still be required? Unfortunately, this question is not resolved in *Ex parte Johnson.*

In light of *Ex parte Johnson*, we believe that the nature of the contempt order in the instant case takes on added significance. While forcing compliance with a child support order could be accomplished through a purely civil constructive contempt order and thus the contemnor would possess the keys to his own freedom, such is not the case before us. Here the punitive portion of the order required relator to be confined for at least six months regardless of any subsequent willingness to obey the support order. For the first six months of confinement relator would not possess the keys to his own freedom. We believe this punitive portion of the contempt order triggered the constitutionally guaranteed criminal due process requirements which *Ex parte Johnson*, affords those contemnors in a constructive criminal contempt. As in *Ex parte Johnson*, we find that the record contains no waiver by relator Trevino of his right to be present at the contempt hearing. The burden to show such a waiver, if any existed, was upon the State in this case. This the State failed to do. Relator Trevino is ordered discharged.