**Ex parte Gideon Mark BOWERS, Relator.**

No. 01–93–00805–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 1994.

Rehearing Overruled Nov. 17, 1994.

Leslie Werner de Soliz, David Michael Ryan, Houston, for appellant.

Jeffrey A. Lehmann, Houston, for appellee.

## OPINION

DUGGAN, Justice.

Before an opinion issued in this case, a majority of this Court called for an en banc review[1] concerning the analysis of the fifth

---

1. Chief Justice Oliver–Parrott requested en banc review and Justices Cohen, Mirabal, O'Connor, Wilson, and Hedges agreed.

amendment violation. *See* TEX.R.APP.P. 79(d), 100(f).

This is an original habeas corpus proceeding. Relator, Gideon Mark Bowers, contends that his confinement for contempt is illegal because he did not receive notice of the permanent injunction he was charged with violating. He also alleges that the trial court (1) had no jurisdiction over him, and (2) by the manner and means in which it conducted the hearing on the motion for contempt, violated his rights under the fifth, sixth, and fourteenth amendments to the United States Constitution.

On June 25, 1993, the trial court signed a final judgment in *Unauthorized Practice of Law Committee of the Supreme Court of Texas v. Gideon Mark Bowers, d/b/a/ Houston Self–Help Law Center,* No. 92–059860 (Dist.Ct. of Harris County, 280th Dist. of Texas) (*UPLC v. Bowers*). Among other things, the judgment permanently enjoined relator from: (1) representing to any person or entity that he is "certified" by the State Bar of Texas, Legal Assistant Division; and (2) engaging in any practice constituting the practice of law as defined by the laws of the state of Texas at TEX. GOV'T CODE ANN. § 81.101 (Vernon 1988).

On July 19, 1993, the Unauthorized Practice of Law Committee of the Supreme Court of Texas (UPLC) filed a motion for contempt and request for show cause hearing, alleging that relator had violated the permanent injunction as follows:

1. Representing to Grant Cook, a licensed attorney, that he was "certified" by the State Bar of Texas, Legal Assistant Division; and/or

2. Appearing in the 190th Judicial District Court of Harris County, Texas, on or about July 14, 1993 to represent a party known as "Seal Parts", sometimes abbreviated as "SEPAR", in a legal proceeding styled *Harry L. Bowles et. al v. Charles N. Schwartz, Jr., et. al* with cause number 91–025939; and/or

3. Executing an Agreed Order in the proceeding described in No. 2 above, on or about July 14, 1993, on behalf of "SEPAR", a party to such case, and acting as an attorney and legal representative of "SEPAR". . . .

On July 27, 1993, the trial court signed an order to show cause on the contempt motion, and set a hearing for August 27, 1993. Relator moved for continuance, the trial court reset the hearing to September 1, 1993, and the hearing was held on September 1.

In a judgment of contempt and order of commitment signed on September 1, 1993, the trial court found that relator had violated the permanent injunction as alleged in the motion for contempt, was in contempt of court, and assessed punishment at a $100 fine and 10–days imprisonment in the county jail. The order of commitment also provided that after the 10 days were served, relator would remain in jail an additional day if the fine remained unpaid. Relator was incarcerated on September 27, 1993, until this Court released him on bond pending a determination on whether habeas corpus relief should be granted.

■ Preliminarily, we note that relator complains he never received notice of the motion for contempt, but only of the show cause hearing. We have read the statement of facts from the contempt hearing filed by relator in this proceeding. Relator was represented by counsel, and this issue was never raised before the trial court. It is waived. *See Ex parte Occhipenti,* 796 S.W.2d 805, 810 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding) (relator waived complaint of inadequate notice of specific contemptuous acts because he failed to make specific exceptions requesting further notice of charges); *Ex parte Stephens,* 734 S.W.2d 761, 762 (Tex. App.—Fort Worth 1987, orig. proceeding) (complaint that contempt motion lacked specificity waived because relator failed to properly object in the trial court).

Furthermore, the order to show cause did more than specify the date, time, and place of the hearing on the UPLC's motion for contempt. It also stated that relator had violated the final judgment of June 25, 1993, and quoted, from the motion for contempt, the same three ways in which the violation had occurred. The same information appeared in the order to show cause as in the motion for contempt. *See, e.g., Ex parte Vetterick,* 744

S.W.2d 598, 599 (Tex.1988, orig. proceeding) (due process requires that alleged contemnor receive full and unambiguous notification of the accusation of any contempt; notice should be by show cause order or equivalent legal process personally served on alleged contemnor). In his special appearance and plea to the jurisdiction with motion for continuance, relator acknowledges that he received the order to show cause. Relator does not challenge the sufficiency of the description of the three violations alleged in the order.

We find relator's complaint, that he never received notice of the motion for contempt, to be without merit.

■ Notice or knowledge of the order that one is charged with violating,[2] is a jurisdictional prerequisite to the validity of a contempt order. *Ex parte Conway*, 419 S.W.2d 827, 828 (Tex.1967, orig. proceeding). Relator states he never received notice of the permanent injunction contained in the final judgment of June 25, 1993.

Rule 683 of the Texas Rules of Civil Procedure reads as follows:

> *Every order granting an injunction* and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and *is binding only upon the parties to the action*, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

(Emphasis added.)

■ Under rule 683, a party does not need to receive actual notice of an injunction in order to be bound by it. A party to a suit is charged by law with notice of all orders and judgments rendered in the suit. *K & S Interests, Inc. v. Texas Am. Bank/Dallas*, 749 S.W.2d 887, 892 (Tex.App.—Dallas 1988, writ denied) (op. on reh'g); *Pentikis v. Texas Elec. Serv. Co.*, 470 S.W.2d 387, 390 (Tex.Civ. App.—Fort Worth 1971, writ ref'd n.r.e.); *Banks v. Crawford*, 330 S.W.2d 243, 246 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.).

■ A party to a suit generally is one named in the pleadings, who is served, accepts or waives service, or appears, and who participates at trial and contests the cause of action. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex.1991) (judgment may not be rendered against any defendant unless upon service, acceptance or waiver of process, or appearance); *Chandler v. Welborn*, 294 S.W.2d 801, 808 (Tex.1956) (petitioners were parties as to certain respondents to the suit because the respondents named them as adverse parties by reference to another answer and the petitioners through counsel participated at trial and vigorously contested respondents' cause of action; petitioners were not misled or prejudiced in any way); *Daca, Inc. v. Commonwealth Land Title Ins. Co.*, 822 S.W.2d 360, 363 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (trial court could not have rendered judgment against Daca because it was not named as a defendant and had not been served).

Relator does not argue here that he was not served with process and did not appear in *UPLC v. Bowers* or was not named in that suit. The record reflects that relator, as a pro se, filed several documents in the suit, including a notice of expedited agreed oral argument for co-counsel of choice, a motion to dismiss with prejudice for lack of jurisdiction, first amended counterclaims at law and motion to dismiss for lack of jurisdiction (filed May 17, 1993), and a special appearance and plea to the jurisdiction with motion for continuance (filed August 20, 1993).[3]

The final judgment in *UPLC v. Bowers* reflects that relator did not participate at trial:

> BE IT REMEMBERED that on the 1st day of June, 1993, came on to be presented

---

2. In this case, the final order is the judgment granting a permanent injunction in *UPLC v. Bowers*.

3. Under Tex.R.Civ.P. 120a, a special appearance must be made before any other plea, pleading, or motion. Here, relator's "special appearance" was made after he filed his counterclaims.

the trial on the merits of the above case, and the UNAUTHORIZED PRACTICE OF LAW COMMITTEE OF THE SUPREME COURT OF TEXAS, by and through its Sub–Committee, the UPLC for Harris County, Texas appeared and announced ready for trial, the Defendant [relator] failed to make an appearance after receiving notice from the Trial Coordinator that the case was set for trial at 8:30 a.m. on June 1, 1993. . . .

But relator does not complain that he did not receive proper notice of the trial or that he was prevented from participating at trial.[4]

We conclude that relator was a party to the suit, a fact he does not dispute, and as such, under rule 683, had notice of the judgment.

**Jurisdiction**

■ Relator argues that he has continually asserted the trial court has no jurisdiction over him. According to relator, he is a citizen of the Republic of Texas, not of the state of Texas, and as such, the court does not have jurisdiction. Relator states:

> Regardless of whether this Court feels the jurisdictional argument presented by Relator is frivolous, the point is that, contrary to any judgmental recitations to the contrary, the trial court never made a determination that it had jurisdiction over Relator. When raised at the contempt hearing, the court summarily dismissed even the idea that it did not have jurisdiction over Relator.

■ Personal jurisdiction is composed of two elements: (1) the defendant must be amenable to the jurisdiction of the court; and (2) if the defendant is amenable to the jurisdiction of the court, the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex.1985).

As we stated above, relator's complaint that he had no notice of the contempt proceeding is without merit; relator makes no complaint about the validity of the service of process in *UPLC v. Bowers*. In summary, there is no issue concerning the second element of personal jurisdiction, valid service of process.

Concerning relator's amenability to the jurisdiction of the court, he has never argued that he is not domiciled in Harris County, Texas, that he does not reside in Harris County, Texas, or that he does not conduct business in Harris County, Texas. The only argument he makes relative to his amenability to the jurisdiction of the court is that he is a citizen of the Republic, not the State of, Texas.[5] The trial court neither erred nor abused its discretion in summarily dismissing such an argument.

**Constitutional Violations**

Relator contends that the trial court violated: (1) his fifth amendment rights by requiring him to take the stand and give testimony, even if for the sole purpose of identification; (2) his sixth and fourteenth amendment rights to a fair and impartial hearing by calling a court clerk to prove that relator had notice of the permanent injunction he was charged with violating; and (3) his sixth amendment right to effective assistance of counsel.

**1. Fifth amendment (identification)**

In its motion for contempt and request for show cause hearing, the UPLC requested that relator be held in contempt, but did not specify that he be punished by a fine, incarceration, or both. Nor did the order to show cause issued by the trial court specify the punishment that was sought. However, the statement of facts indicates that both parties understood that the UPLC was seeking a fine and jail time as punishment. Section 21.002(b) of the Texas Government Code (Vernon 1988) provides that a district court

---

4. A "post-answer default" judgment, like that here, is not necessarily error. *See Garcia v. Arbor Green Owners Ass'n, Inc.*, 838 S.W.2d 800, 804 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (post-answer default judgment affirmed); *Wiseman v. Levinthal*, 821 S.W.2d 439, 442 (Tex.

App.—Houston [1st Dist.] 1991, no writ) (post-answer default judgment affirmed).

5. The Republic of Texas ceased to exist on December 29, 1845, when it was admitted into the United States as the State of Texas.

may punish for contempt and that the punishment may be a fine not to exceed $500, jail confinement not to exceed six months, or both.

At the contempt hearing, the UPLC called relator as its second witness. His attorney objected before relator took the stand:

Mr. Ryan: Your Honor, I am going to object to that. This motion for contempt, I believe, seeks to incarcerate Mr. Bowers, if I am not mistaken. At that point his 14th Amendment rights attached under Supreme Court ruling of *Friot vs. Friot* (sp?),[6] and he has the right to remain silent.

The Court: Okay. He can take the stand and say that.

The privilege against self-incrimination applies to criminal contemnors. *Ex parte Werblud,* 536 S.W.2d 542, 547 (Tex. 1976); *Ex parte Stringer,* 546 S.W.2d 837, 840 (Tex.Civ.App.—Houston [1st Dist.] 1976, orig. proceeding) (op. on reh'g). The attorney for an alleged criminal contemnor may correctly assert his client's privilege against self-incrimination, and, if he does, the client should not be sworn and compelled to testify at all. *Werblud,* 536 S.W.2d at 548; *Stringer,* 546 S.W.2d at 839. We conclude that the trial court erred in compelling relator to be sworn and to testify over his attorney's objection.

However, the holdings in *Werblud* and *Stringer* arose in cases where both Mr. Werblud and Mr. Stringer were compelled to answer questions concerning matters that served as the basis for their commitment. *Werblud,* 536 S.W.2d at 547; *Stringer,* 546 S.W.2d at 838. Although neither court discussed in its opinion the harm arising from the trial court's error, the harm was obvious. In *Ex parte Snow,* 677 S.W.2d 147, 149 (Tex. App.—Houston [1st Dist.] 1984, orig. proceeding), this Court held that the relator's contempt was proven before he took the stand, and any error in compelling him to testify was harmless.

The two dissenting opinions rely on our decision in *Anderson v. State,* 871 S.W.2d 900, 905–6 (Tex.App.—Houston [1st Dist.]

1994, no pet.). One holds *Anderson* to be "a similiar situation." The other holds that *Anderson* "cannot be distinguished" and that "[s]tare decisis requires that we be consistent." We disagree.

In *Anderson,* the trial court compelled the defendant to be sworn and to testify to his name and identify his signature on a card in the State's "pen packet"—during the punishment phase of a criminal trial while the State was proving the indictment's enhancement allegations! Such erroneous action and the resulting evidence elicited was by no means "harmless" under rule 81(b)(2). The harm was clear. As in *Werblud* and *Stringer,* but unlike our case, the trial court compelled Anderson to answer questions that dealt with substantive allegations in the trial. We find that *Anderson* is consistent with our decision here.

Here, relator was asked only his name and address. The record shows that his identification was not an issue. Relator was not compelled to be a "witness against himself," as stated in U.S. Const. amend. V. There was no harm.

We overrule relator's fifth amendment complaint.

### 2. Sixth and fourteenth amendments (fair and impartial hearing)

After he had cross-examined counsel for the UPLC, relator's counsel moved for dismissal of the contempt action, arguing that it was based on an order that was entered without a trial and that relator never received notice of the injunction. At this point, the trial court telephoned the clerk to see if relator was sent the usual postcard notice of entry of judgment. The court called the clerk to the stand, had her take the oath, and asked her if a postcard was sent to relator notifying him of the judgment. The clerk testified that a postcard was mailed to relator at two different addresses, both of which had been provided by relator. The court then invited the attorneys to ask questions; both declined. Neither party

---

6. *Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).

complained about the calling of the clerk as a witness.

Because relator lodged no objection to the above procedure with the trial court, it is waived. *See Occhipenti*, 796 S.W.2d at 810. Furthermore, in light of our analysis above on notice, the testimony of the clerk was not necessary to establish that there was notice to relator of the permanent injunction.

### 3. Sixth amendment (effective assistance of counsel)

 Relator argues the trial court denied him his sixth amendment right to effective assistance of counsel in that the trial court threatened relator's counsel with contempt of court and sanctions, and repeatedly, in manner and tone, sought to undermine counsel's attempt to provide a vigorous defense. Relator does not cite to any pages in the statement of facts where such threats occurred, nor does relator support his contention with any legal authority that such action of the trial court, if true, rendered the contempt judgment void.[7] Relator's counsel was not in fact sanctioned by the trial court.

We have reviewed the statement of facts and noted only one place where relator's counsel was threatened with sanctions. When counsel arrived late to the contempt hearing, the following exchange occurred:

> The Court: Mr. Ryan, you are 40 minutes late to court this morning. I am not requiring an explanation from you, but you may give me one if you would like.
>
> Mr. Ryan: I was caught in traffic on the Southwest Freeway. I had been on the Southwest Freeway from approximately 5 minutes after 7:00 o'clock this morning.
>
> The Court: You should expect traffic in and around Houston, Texas, in rush hours getting to work. 5 minute after 7:00 o'clock is not a reasonable time to leave from Alief to expect to have expectation to getting to court at 8:00 o'clock.

> *I will withhold the decision of whether you should be held in contempt of court for being late this morning until later. All right.*

(Emphasis added.)

We find no merit to relator's sixth amendment contention either in the record or in the law.

We deny relator habeas corpus relief and order him remanded to the custody of the sheriff of Harris County to complete the terms of the order of commitment dated September 1, 1993, signed by the judge of the 280th District Court of Harris County, Texas, in cause number 92–059860.

OLIVER–PARROTT, C.J., and COHEN, MIRABAL, WILSON, and HEDGES join the opinion of DUGGAN, J.

COHEN, J., concurs separately.

ANDELL, J., files a dissenting opinion in which HUTSON–DUNN and O'CONNOR, JJ., join.

O'CONNOR, J., also dissents separately.

COHEN, Justice, concurring.

I concur only to point out that in *Anderson v. State*, 871 S.W.2d 900 (Tex.App.—Houston [1st Dist.] 1994, no pet.), the harm was patently obvious. Before the judge in *Anderson* made the defendant testify to incriminating facts, the judge had stated that he was going to find the enhancement paragraph not true. *Id.* at 905. After the judge erroneously forced the defendant to testify over objection to incriminating facts, the judge then found the enhancement paragraph true. *Id.* By anybody's definition, that is harm. That is undoubtedly also the reason that there was no harm "analysis" in *Anderson*—no "analysis" was needed.

---

7. The validity of a contempt judgment can be attacked only collaterally by writ of habeas corpus. *Ex parte Williams*, 690 S.W.2d 243 n. 1 (Tex.1985, orig. proceeding); *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 827 (1960, orig. proceeding). For this Court to order habeas corpus relief, the trial court's order of contempt and commitment must be void, either because it was beyond the power of the court or because it deprived the relator of his liberty without due process of law. *See Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980, orig. proceeding); *Ex parte Alford*, 827 S.W.2d 72, 73–74 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding).

ANDELL, Justice, dissenting.

By allowing the harmless error rule, which is promulgated for the efficient administration of justice, to take precedence over the fifth amendment under the facts in this case, the majority has today taken an unnecessary and unjustifiable step onto the slippery slope of government intrusion into our lives. U.S. CONST. amend. V provides: "[N]or shall any person ... be compelled in any criminal case to be a witness against himself...." After relator claimed this privilege, the trial court ordered him to the stand to be sworn and to testify. In so doing, the trial court contradicted a tenet of American liberty as well as a well known concept that as words are formed from the mouth *the body also speaks*—announcing many unintended things to the fact finder in violation of a defendant's right to protection from self-incrimination. Therefore, I respectfully dissent.

### There was a Constitutional Violation

All justices of this Court agree that in *Ex parte Werblud,* 536 S.W.2d 542, 548 (Tex. 1976), and in *Ex parte Stringer,* 546 S.W.2d 837, 839 (Tex.Civ.App.—Houston [1st Dist.] 1976, orig. proceeding) (op. on reh'g), the Texas Supreme Court and this Court held that the accused (or his attorney on his behalf) in a criminal contempt proceeding could assert his privilege against self-incrimination before being sworn and, in such case, could not be sworn and could not be compelled to testify. The majority agrees that the trial court erred in compelling relator to be sworn and to testify over his attorney's timely objection. Next, however, the majority concludes that there was no harm in this violation of relator's fifth amendment right against self-incrimination.

1. The majority approaches this when it states, "Relator was not compelled to be a 'witness against himself,' as stated in U.S. Const. amend. V." From this, the majority should have concluded that there was no error. Instead, the majority's next sentence is, "There was no harm."

2. I would still have disagreed with either of these underlying conclusions, i.e., that relator had waived his constitutional rights, or that the trial court's action was not error.

3. *Werblud* is silent about whether a harm analysis should be conducted when a relator's fifth

If the majority had concluded that the trial court's action in ordering relator to testify was, in fact, *not* a violation of his fifth amendment rights, and, hence, *not error,* then it would have been appropriate to overrule relator's argument and deny relief.[1] The same disposition would have been appropriate if the majority had concluded that relator had waived his constitutional rights.[2] The majority opinion does not suggest waiver or absence of error. It turns upon whether the error was harmful.[3]

### Which Harmless Error Rule?

We should consider the purpose behind the harmless error rule if we are to apply it properly. It helps if we compare our own state rule with the federal rule. The Texas harmless error rule for criminal cases[4] states:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court *shall reverse* the judgment under review, *unless* the appellate court determines beyond a *reasonable doubt* that the error made *no* contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2) (emphasis added). The phrasing of the rule itself reveals an implicit tendency toward reversal when error is presented to this Court. When error is presented, we *shall reverse unless* the error is "harmless."

The federal harmless error rule reads:

> On the hearing of any appeal or writ or certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects

amendment rights have been violated. *Other* cases that I discuss herein *have* applied the harmless error rule to different fifth amendment violations, but none where the accused was compelled to testify over a proper claim of privilege.

4. Contempt proceedings are quasi-criminal, and the party alleged to be in contempt has all the rights and privileges of one accused of a crime, including the privilege against self-incrimination. *Ex parte Harris,* 581 S.W.2d 545, 547 (Tex.Civ. App.—Fort Worth 1979, orig. proceeding).

which do not affect *the substantial rights of the parties.*

28 U.S.C.S. § 2111 (1992) (emphasis added). While this federal rule requires that the reviewing court evaluate the error or defect for whether it "affect[s] the substantial rights of the parties[,]" the language of the rule does not suggest the same inclination to reverse that we have embodied in our Texas rule. The United States Supreme Court has yet to apply this federal statutory rule to federal *constitutional* error. *Brecht v. Abrahamson,* — U.S. —, —, 113 S.Ct. 1710, 1718, 123 L.Ed.2d 353 (1993).

The Court has, however, held that even constitutional violations are subject to a harmless error analysis. In *Chapman v. California,* 386 U.S. 18, 19, 87 S.Ct. 824, 825, 17 L.Ed.2d 705 (1967), the petitioners' fifth amendment rights were violated by the State's repeated references to the petitioners' failure to testify at trial. The Court explicitly rejected the petitioners' contention that *all* federal constitutional errors are harmful. 386 U.S. at 21–22, 87 S.Ct. at 827. The Court continued:

> We conclude that there may be some constitutional errors which in the setting of a particular case are *so unimportant and insignificant* that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.
>
> . . . .
>
> [O]ur prior cases have indicated that there are some constitutional rights *so basic to a fair trial that their infraction can never be treated as harmless error. . . .*

*Chapman,* 386 U.S. at 22–23, 87 S.Ct. at 827–28 (emphasis added). The *Chapman* Court then fashioned a *harmless-constitutional-error* rule: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was *harmless beyond a reasonable doubt."* 386 U.S. at 24, 87 S.Ct. at 828 (emphasis added).[5]

### Burden on the UPLC to Show No Harm

In *Chapman,* the Court observed that "the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment." 386 U.S. at 24, 87 S.Ct. at 828. The Court then noted that its holding left the recipient of the error with the burden to show that was harmless. 386 U.S. at 24, 87 S.Ct. at 828. The Supreme Court has very recently revisited this issue. Referring to its *Chapman* holding, the Court restated this burden in more direct language: "The State bears the burden of proving that an error passes muster under under this standard." *Brecht,* — U.S. at —, 113 S.Ct. at 1717.

In this case, the UPLC[6] did not ask this court to apply a harmless error analysis. It simply claimed, without citing any authority of any kind, that there was *no error.* The majority disagrees and holds that it was error. The UPLC, which was the beneficiary of this error, has failed to meet its burden to show harmlessness beyond a reasonable doubt.

Here, all that relator was compelled to testify to was his name and address. We must remember, however, that the trial court as fact finder is entitled to observe and take into account the demeanor of a witness. The *content* of relator's answers may, indeed, have been "harmless." But it is possible that the *manner* in which he delivered his answers, through his demeanor, his tone of voice, his eye movements, and his facial expressions, may have been harmful.

### Errors that are Harmful Per Se

The *Chapman* Court indicated three types of constitutional errors that could *not* be subject to a harm analysis: (1) the use of a coerced confession; (2) the denial of the right to counsel; and (3) the denial of the right to an impartial judge. 386 U.S. at 24, n. 8, 87

---

5. The *Chapman* Court held that the fifth amendment violations were harmful in that case, and it reversed and remanded for new trial. 386 U.S. at 26, 87 S.Ct. at 829.

6. The UPLC, as the criminal contempt movant, assumes the role of the State for purposes of this analysis.

S.Ct. at 828, n. 8.[7]

This "official" list of *per se harmful* constitutional errors has deleted one and added three more through decisions of the United States Supreme Court after *Chapman*, resulting in a new total of five. Specifically, the Court deleted the first *Chapman* item from this list when it held in *Arizona v. Fulminante* that the use of a coerced confession is, indeed, subject to a harm analysis. 499 U.S. 279, 295–96, 303, 111 S.Ct. 1246, 1257, 1261, 113 L.Ed.2d 302 (1991). The three additional *per se harmful* constitutional errors that the Court has added are: (1) the unlawful exclusion of members of the defendant's race from a grand jury; (2) the denial of a defendant's right to self-representation at trial; and (3) the right to a public trial. *See Fulminante*, 499 U.S. at 310, 111 S.Ct. at 1265 (citing *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)); *McKaskle v. Wiggins*, 465 U.S. 168, 177–78, n. 8, 104 S.Ct. 944, 950–51. n. 8, 79 L.Ed.2d 122 (1984); and *Waller v. Georgia*, 467 U.S. 39, 49, n. 9, 104 S.Ct. 2210, 2217, n. 9, 81 L.Ed.2d 31 (1984). These five constitutional violations have been identified as *harmful per se*. I would hold that the actions taken by the trial court in the present case constitute a sixth.

### Trial Errors vs. Structural Defects

The Supreme Court later distinguished two categories of constitutional violations: (1) *trial errors*, involving the presentation of the case to the jury, and which may be subject to a harm analysis; and (2) "*structural defects* in the constitution of the trial *mechanism*, which defy analysis by 'harmless-error' standards." *Brecht*, —— U.S. at ——, 113 S.Ct. at 1717 (emphasis added).[8]

### Silence may be Golden, But it's Fool's Gold

Until today, defendants could maintain a measure of security by relying on the fifth amendment to protect them from being forced to testify at trial. With that expectation, a nervous, inarticulate defendant could sit calmly at the counsel table and remain composed, knowing that he would not be called upon to speak. The majority's holding today makes this a false sense of security.[9] The privilege against self-incrimination is not what it seemed to be.

In *Brecht*, a habeas case, the petitioner had requested relief on grounds that the State had violated his fifth amendment privilege when it attempted to impeach him by repeatedly referring to his post-*Miranda*[10] silence. —— U.S. at ——–——, 113 S.Ct. at 1713–14. The Court held that this violation was of the *trial error* type, and that such cases were subject to the harmless error rule. A court's reference to a defendant's post-*Miranda* silence, however, is different from the present case precisely because *the defendant was allowed to remain silent.* While *references* to such silence are fifth amendment violations, they are not as fundamental as forcing the defendant to speak against his will, as in the present case. Therefore, *Brecht* is distinguishable and does not control.

Here, the majority follows *Montoya v. State*, 744 S.W.2d 15, 37–38 (Tex.Crim.App. 1987) (op. on reh'g), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988), and *Hicks v. State*, 815 S.W.2d 299, 302–03 (Tex.App.—Houston [1st Dist.] 1991, no pet.), where the prosecutors commented on the defendants' failure to testify, and the reviewing courts analyzed for harm. Again, as with *Brecht, the defendants were allowed to re-*

---

**7.** For these three types of *per se harmful* constitutional error, the Court cited, respectively, *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

**8.** In concurring, four Justices called this "trial errors/structural defects" scheme a "meaningless dichotomy" and they acknowledged that some "trial errors," such as the omission of a reason-

able doubt instruction, could, in fact, distort the very structure of the trial. *Fulminante,* 499 U.S. at 291, 111 S.Ct. at 1254–55.

**9.** Henceforth, in Texas, a defendant must sit at the counsel table and wonder when and if he will be forced to testify and to what extent.

**10.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*main silent* and this was used against them. But in neither case was the defendant coerced into taking the stand, being sworn, and testifying against himself.

*Montoya* and *Hicks* involved the defendants' silence at trial, whereas *Brecht* involved the defendant's post-*Miranda* silence before trial. In each case, the defendant's *silence* was unlawfully used against him. In the present case, *the defendant's silence was taken away from him.* This is substantively different from the cases upon which the majority relies. I have found no case, state or federal, prior to this one, in which the reviewing court applied the harmless error rule to the compelled testimony of an accused. I would hold that, under the Supreme Court's categorization in *Fulminante* and *Brecht,* the trial court's action in the present case constitutes a *structural defect* in the trial mechanism, and that it cannot be evaluated for harm. *See Brecht,* ⸺ U.S. at ⸺, 113 S.Ct. at 1717

### We Cannot Review that which *Cannot* be Presented to Us

In *Ex parte Snow,* 677 S.W.2d 147, 149 (Tex.App.—Houston [1st Dist.] 1984, orig. proceeding), this Court held that the relator's contempt was proven before he took the stand, and any error in compelling him to testify was harmless. Unlike *Snow,* the majority in the present case does not indicate any comparable belief that relator's contempt had already been proven before he took the stand. Even as relator approached the witness stand, his face may have paled in apparent trepidation. We do not know. We *cannot* know. The trial court could have been prejudiced by its observation of these and other nonverbal or paralinguistic indicators that do not get recorded for appellate review. We are not in a position to conduct a harm analysis on what cannot be brought before us.

I believe this Court's opinion in *Stringer,* more correctly than *Snow,* states the law concerning the compelling of an alleged criminal contemnor to testify:

> A finding of prejudice is not required to support our holding that the order holding Relator for contempt is void. The failure

to accord a defendant in a criminal contempt proceeding his constitutional privilege against self-incrimination renders the subsequent imposition of a penalty void and subject to collateral attack.

*Stringer,* 546 S.W.2d at 842–43 (citations omitted).

States may provide *greater* protection to their citizens against government intrusion and coercion than that provided by the United States Constitution, but they cannot provide *less. See, e.g., Cooper v. State,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967) and *Heitman v. State,* 815 S.W.2d 681, 682–83 (Tex.Crim.App.1991). The United States Constitution establishes the floor below which we may not go. *Cooper,* 386 U.S. at 62, 87 S.Ct. at 791; *Heitman,* 815 S.W.2d at 682. States are free to apply their own harmless error rule to violations of their own state law when there is no federal constitutional violation. *Cooper,* 386 U.S. at 62; 87 S.Ct. at 791. If we apply our own harmless error rule to violations of fundamental rights under the United States Constitution, however, we will have undermined the floor upon which our system of justice stands. By allowing the State to coerce this limited amount of testimony and review for harm, we will have encouraged the State to repeat this action. Later defendants may be coerced into progressively longer testimony and cross-examination, stopping just short of outright confession, and the courts will analyze for harm. We do not have the prescience to know where this erosion of the foundations would stop. Therefore, it is imperative that we maintain the fifth amendment protection as an absolute safeguard that is *effective immediately upon its invocation.*

### Our own Precedent

Six months ago, this court faced a similar situation in *Anderson v. State,* 871 S.W.2d 900 (Tex.App.—Houston [1st Dist.] 1994, no pet.). In that case, the appellant spontaneously made a statement to the court during the punishment phase, without taking the standing or being sworn, and the State sought to cross-examine him. At that point, with the appellant still unsworn, the appellant's counsel asserted the fifth amendment

privilege against self-incrimination. The trial court overruled the claim of privilege and compelled the appellant to the stand to be sworn and testify. *Id.* at 905–06. We held that the fifth amendment privilege attached at the moment that the appellant's trial counsel invoked it, and that the trial court erred in compelling the appellant to be sworn and to testify. *Id.* We reversed and remanded for a new punishment hearing without conducting a harm analysis.

The majority claims that the harm in *Anderson* was obvious because the appellant testified to his signature on the State's pen packet, after which the trial court found the enhancement paragraph to be true. Maj. at 351–352; *Anderson,* 871 S.W.2d at 905. I disagree with the majority's characterization of *Anderson* that it contains an implied harm analysis. In *Anderson,* we did not even mention harm, and we decided it on the fifth amendment violation when we stated: "The trial judge erred in compelling the appellant to testify even though he had invoked the privilege against self-incrimination. We ... reverse...." *Id.* at 906. Nowhere did we cite to the compelled testimony and then review its content for harm.

I interpret *Anderson* to be consistent with reversal in this case. Accordingly, I would hold that this case is controlled by both *Stringer* and *Anderson,* and I would sustain relator's fifth amendment complaint.

I agree with Justice Duggan's analysis on notice, jurisdiction, and the sixth and fourteenth amendments. However, because I would sustain relator's fifth amendment complaint, I would grant relator habeas corpus relief and order him discharged from custody.

O'CONNOR, Justice, dissenting.

I join in Justice Andell's dissent. Stare decisis requires that we be consistent. The majority's opinion in this case is not consistent with the Court's opinion in *Anderson v. State,* 871 S.W.2d 900 (Tex.App.—Houston [1st Dist.] 1994, no pet.). If this Court was correct in *Anderson,* the majority's opinion in this case is wrong.