**Patrick Boyd HARTSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–00–00238–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 20, 2001.

Decided Oct. 11, 2001.

Kathryn B. Moon, Longview, for appellant.

Kyle Freeman, County & District Attorney, Henderson, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Patrick Hartson appeals from his conviction by a jury for the offense of forgery, a

state jail felony. He was sentenced to two years' imprisonment in a state jail facility and a $5,000 fine. On appeal, he contends the trial court erred by overruling his Motion for Continuance, by not granting a mistrial based on jury misconduct, by allowing prior bad acts to be introduced into evidence, and by allowing irrelevant and inflammatory evidence to be introduced. He further contends the evidence was legally and factually insufficient to support the verdict.

The evidence showed that Patrick Hartson, his wife, Teresa, and her son purchased a radar detector at Radio Shack.[1] Hartson showed Teresa the detector to purchase and left the store. She purchased it with a check. The check was on an account in the name of "Michael or Michelle Brock." After Teresa left, store personnel contacted the bank, which informed them that the account had been closed for some time. About an hour later (and while the store owner was at the district attorney's office regarding the check), Hartson, Teresa, and her son came back into the store and selected a computer. As on the first occasion, Hartson and Teresa's son went outside while Teresa stayed to pay for the computer. During the purchase, store personnel contacted police, who promptly arrived. At that time, Teresa identified herself with her correct name and pointed outside the store to Hartson, identifying him as her husband, "James Landrum." She then explained she and her "husband" had lived with the Brocks and were being permitted to use the checks to pay off a debt they were owed. The police arrested Hartson (who identified himself with his correct

name) and Teresa. Both were charged with forgery.

Hartson first contends the trial court committed reversible error by denying his Motion for Continuance, which was requested before voir dire began. In his oral request, he informed the court Teresa was willing to testify that she was the sole culpable party in the case and that he had nothing to do with the form of the attempted purchase; however, that her attorney had warned her not to testify because to do so would be a judicial admission of her own guilt. Hartson's counsel also stated he believed Teresa's counsel was working on a plea bargaining agreement. He contended Teresa was thus unavailable until her own position was determined and asked for a continuance. The State argued counsel's statements were only conjecture and would remain so until she refused, in court, to testify.

■■■ A defendant may not require a codefendant to testify if she has indicated she will assert her privilege against self-incrimination under the Fifth Amendment to the United States Constitution. *Whitmore v. State*, 570 S.W.2d 889, 896 (Tex. Crim.App.1976); *Chandler v. State*, 744 S.W.2d 341, 342 (Tex.App.—Austin 1988, no pet.). However, after the witness has been convicted or acquitted, that witness's testimony then becomes available. *Whitmore*, 570 S.W.2d at 896. Also, a witness may change his or her mind and, while represented by counsel, elect to waive that right and testify. Thus, it has been held that the witness then becomes the source of new factual information not otherwise previously available.[2] *Id.*

---

1. Hartson's brief refers to Teresa as Patrick's wife. The record shows that her name is Teresa Landrum.

2. Newly available evidence is treated the same as newly discovered evidence. *Whitmore v. State*, 570 S.W.2d 889, 896 (Tex.Crim. App.1976).

■ The only means of preserving error in the overruling of a motion for continuance due to the absence of a witness is through a motion for new trial. *Taylor v. State*, 612 S.W.2d 566, 569 (Tex.Crim.App. [Panel Op.] 1981); *Roper v. State*, 558 S.W.2d 482, 484 (Tex.Crim.App.1977); *Latham v. State*, 20 S.W.3d 63, 66 (Tex. App.—Texarkana 2000, pet. ref'd); *Hackleman v. State*, 919 S.W.2d 440, 452 (Tex. App.—Austin 1996, pet. ref'd, untimely filed); *Duncan v. State*, 899 S.W.2d 279, 282 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *Outland v. State*, 810 S.W.2d 474, 475 (Tex.App.—Fort Worth 1991, pet. ref'd).

Since *Whitmore*, the Texas Court of Criminal Appeals has emphasized that a defendant is not entitled to a new trial merely because a codefendant's testimony is "newly available." *See Van Byrd v. State*, 605 S.W.2d 265, 267 (Tex.Crim.App. [Panel Op.] 1980); *Todd v. State*, 601 S.W.2d 718, 720 (Tex.Crim.App. [Panel Op.] 1980); *Rodriguez v. State*, 903 S.W.2d 405, 412 n. 6 (Tex.App.—Texarkana 1995, pet. ref'd).

■■ Thus, unless the defendant satisfies all four requirements for a new trial based on newly discovered or available evidence, he or she is not entitled to a new trial simply because a convicted (as opposed to an acquitted) codefendant is ready, willing, and able to testify to facts which, if believed by the jury, would exonerate the defendant. *Rodriguez*, 903 S.W.2d at 412 n. 6; *Wilson v. State*, 633 S.W.2d 351, 352 (Tex.App.—Corpus Christi 1982, pet. ref'd). The defendant must show: (1) the newly discovered evidence was unknown to the movant at the time of trial; (2) the failure to discover the evidence was not due to his or her want of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial. *Moore v. State*, 882 S.W.2d 844, 849 (Tex.Crim.App.1994).

■ The trial court's ruling on a motion for continuance is reviewed for abuse of discretion. *Heiselbetz v. State*, 906 S.W.2d 500 (Tex.Crim.App.1995); *see* Tex. Code Crim. Proc. Ann. arts. 29.03, 29.06(6) (Vernon 1989). To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his or her motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex.Crim. App.1996); *Heiselbetz*, 906 S.W.2d at 511.

■ This line of cases ultimately reaches back to the reasoning set out in *Parsons v. State*, 160 Tex.Crim. 387, 271 S.W.2d 643, 656 (1953), which recognized that a motion must have the affidavit of the missing witness or a showing under oath from some other source that the witness would have actually testified to such facts.[3] Hartson did file a Motion for New Trial, but he did not provide any supporting affidavit or evidence to support his contention at the hearing on the motion. Hartson failed to preserve the alleged error. In the absence of supporting evidence,

3. In *Ex parte Werblud*, 536 S.W.2d 542, 548 (Tex.1976), the Texas Supreme Court held that the accused (or his attorney on his behalf) in a criminal contempt proceeding could assert his privilege against self-incrimination before being sworn and, in such case, could not be sworn and could not be compelled to testify. *See also Ex parte Stringer*, 546 S.W.2d 837, 839 (Tex.Civ.App.—Houston [1st Dist.] 1976, orig. proceeding) (op. on reh'g). Similarly, the Texas Court of Criminal Appeals has held that a defendant does not have a right to interrogate a witness before the jury and have him or her invoke the privilege against self-incrimination when each question was asked. *Reese v. State*, 877 S.W.2d 328, 334 (Tex. Crim.App.1994); *Victoria v. State*, 522 S.W.2d 919, 922 (Tex.Crim.App.1975).

we conclude the trial court did not abuse its discretion by refusing to grant the requested continuance. The contention of error is overruled.

■ Hartson next contends the court erred by overruling his oral Motion for Mistrial based on allegations of jury misconduct. At the hearing on his Motion for New Trial, a juror was called and asked whether she and another juror had, while in the jury box, discussed Hartson's guilt before the end of the guilt/innocence phase of the trial. She stated under oath that she had not. Hartson took the stand, testified that he is hard of hearing and reads lips very well, and he had seen her say "guilty" to the man on her left.

■ We review a trial court's denial of a mistrial under an abuse of discretion standard. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex.Crim.App.1999). Mistrial is an extreme remedy for prejudicial events occurring during the trial process. *See Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim.App.1996).

The trial court as fact finder had a right to make the determination as to whether the incident occurred. In this case, there is evidence to support the trial court's determination that no juror misconduct occurred. Accordingly, giving proper deference to the trial court, we hold that no abuse of discretion occurred.

■ Hartson next contends the evidence was legally and factually insufficient to support the jury's verdict. In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319,

99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). The court views the relevant evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In our review, we evaluate all the evidence in the record, both direct and circumstantial. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

■ In contrast, a factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither party. *Johnson*, 23 S.W.3d at 7; *see Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim.App.1996). In determining the factual sufficiency of the evidence to establish the elements of the offense, we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 7; *Clewis*, 922 S.W.2d at 129. In doing so, we review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

■ The evidence in this case does not reflect that Hartson personally forged the checks. The evidence clearly shows that Teresa passed the forged instruments. Hartson's conviction is based on the concept of criminal responsibility for Teresa's commission of the offense.[4] In this case,

---

4. § 7.02. **Criminal Responsibility for Conduct of Another**

   (a) A person is criminally responsible for an offense committed by the conduct of another if:

   (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

the evidence shows that Hartson and Teresa were together while they were selecting the purchases, and it appears (although there is some dissension) that he left just before she wrote the checks at issue. At the scene, she identified him as her husband (but with an incorrect name), and he identified her as a hitchhiker he had just picked up. Blank checkbooks on the Brocks' account were found in Teresa's purse, and no other means of payment were found.

Hartson suggests there is no evidence to show he knew what Teresa was doing. There is no direct evidence of his complicity, but the jury could conclude from the circumstances shown by the evidence—including the parties' conflicting statements concerning their relationship and identities—that Hartson was aware of the activity. The jury could also conclude that Hartson and Teresa were working together to commit the crime—even though Teresa actually did the overt act of passing the forged instruments. The evidence is both legally and factually sufficient to support the verdict.

Hartson next contends the trial court erred by allowing evidence about his prior bad acts to be admitted into evidence at the guilt/innocence phase of trial. Specifically, he complains about testimony that he and Teresa had been to the Radio Shack the previous night and made other purchases with forged checks from that same account.

■■■ The general rule is that at the guilt/innocence phase of trial, extraneous offenses are not admissible to show action and conformity with bad character. The evidence must have relevance apart from character conformity, i.e., it must make more or less probable an elemental fact or a fact that inferentially leads to an elemental fact or tends to disprove in the same way. Examples are to prove motive, opportunity, intent, preparation, blame, knowledge, identity, or absence of mistake or accident. TEX.R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. Crim.App.1990) (op. on reh'g). Our review under this analysis is based on a determination of whether the trial court abused its discretion by failing to exclude the evidence of the other crime, wrong, or act.

■■■ In this case, knowledge and intent were two of the key issues to be determined by the jury in deciding whether Hartson was aware of and involved in the crime of forgery being committed by Teresa. Thus, the evidence was admissible under the exceptions of Rule 404(b).[5]

Hartson also argues the evidence was inadmissible because the State did not provide written notice of its intent to use the prior bad act. Rule 404(b) provides such evidence may be used "provided that upon

---

(2) *acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;* or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PEN.CODE ANN. § 7.02 (Vernon 1994) (Emphasis added.).

5. Hartson did not object at trial that the evidence was more prejudicial than probative; thus, we need not reach the second level of analysis under TEX.R. EVID. 403.

timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction." TEX.R. EVID. 404(b).

■ This means that if a defendant makes a timely request, the State must in advance of trial give the defendant reasonable notice that the State intends to offer evidence of extraneous offenses or bad acts at the guilt/innocence phase of trial. TEX.R. EVID. 404(b). *Compare* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp.2000). Thus, to obtain notice from the State that it intends to offer evidence of a defendant's extraneous offenses or bad acts, the defendant may make a "self-executing request" rather than a motion. *Simpson v. State,* 991 S.W.2d 798, 801 (Tex.Crim.App.1998); *Mitchell v. State,* 982 S.W.2d 425, 426–27 (Tex.Crim.App. 1998); *Webber v. State,* 21 S.W.3d 726, 731 (Tex.App.—Austin 2000, pet. ref'd).

In this case, the record does not contain such a request or motion. Counsel relies on the court's "Standard Pretrial Order" because it contains language requiring the State to provide information about any intended use of extraneous acts. There is neither a request for nor a motion filed seeking discovery, but instead an order by the trial court directing the State to provide information if it planned to use extraneous acts at trial.

The question, then, is the application of TEX.R. EVID. 404(b).[6] The Texas Court of Criminal Appeals has limited this rule to its narrowest possible construction. In

*Espinosa v. State,* 853 S.W.2d 36 (Tex. Crim.App.1993), the Court held that "when a defendant relies on a motion for discovery to request notice pursuant to Rule 404(b), it is incumbent on him to secure a ruling on his motion in order to trigger the notice requirements of that rule." *Id.* at 39; *Simpson,* 991 S.W.2d at 801; *President v. State,* 926 S.W.2d 805, 808 (Tex. App.—Austin 1996, pet. ref'd). Thus, even though a simple request directed to the State will suffice, if a defendant instead files a motion for discovery and inspection—but does not obtain an order, he has not successfully navigated the rapids of this rule—because it does not constitute a *request* for notice regarding extraneous evidence testimony. *See also Harmon v. State,* 889 S.W.2d 521, 524 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

The State was bound to comply. Whether Hartson made a request pursuant to the statute or the court ordered the discovery of its own volition, the result is the same. The order was in place; thus, Hartson was not required to do an unnecessary thing.

■ This issue, however, has not been preserved for review. At trial, counsel objected to the admission of the extraneous acts because they were prior to this offense and were not part of the transaction at issue. TEX.R. EVID. 103(a)(1) and TEX.R.APP. P. 33.1 govern preservation of error concerning the admission of evidence in criminal cases. Combined, these rules state that if on appeal a defendant claims the trial court erred in admitting evidence offered by the State, the claim of error

---

6. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or acci-

dent, provided that on timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction. TEX.R. EVID. 404(b).

must have been preserved by a proper objection and a ruling on that objection. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991). In this case, there was no objection to the evidence based on the State's failure to provide notice of its intent to use the extraneous acts. In that situation, this contention of error has not been preserved for appellate review.

Hartson also argues under that contention the act was not a part of the same transaction and was thus inadmissible under Rule 404(b). Same transaction contextual evidence refers to other offenses so connected with the primary offense they are essential to the State's logical presentment of the evidence regarding the charged offense. *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Crim.App.1993). In other words, the facts and circumstances of the charged offense would make little or no sense if the other offenses were not disclosed, and in narrating one it is necessarily impracticable to avoid describing the other. *See id.; Heiman v. State,* 923 S.W.2d 622, 625 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). The notice requirements in Rule 404(b) do not apply to same transaction contextual evidence. *Hayden v. State,* 13 S.W.3d 69, 75 (Tex. App.—Texarkana 2000, pet. granted); *Hodge v. State,* 940 S.W.2d 316, 319 (Tex. App.—Eastland 1997, pet. ref'd).

We agree the purchases made the preceding night were not a part of the same transactions as the acts at bar. However, they were admissible for other purposes as an exception to that rule: to show intent, preparation, plan, or knowledge. A major issue in this case was the question of whether Hartson knew what Teresa was doing when she wrote the forged checks. The evidence was relevant to that issue, and thus was properly admissible. Error has not been shown.

Hartson also contends the court erred by allowing irrelevant and inflammatory evidence to be introduced to the jury in violation of Tex.R. Evid. 401. He specifically complains about testimony by William Brown, an investigator for the district attorney's office, that Hartson had told him the woman inside the store was "[a] lady he picked up hitching he had given a ride to."

Hartson objected on the basis that the question and answer were irrelevant "because his relationship to the woman had already been established as his wife." Relevance is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. The fact that Hartson made inconsistent statements about the true relationship between him and Teresa when questioned by an authority figure suggests he was aware that she was involved in some unlawful acts and was seeking a way to distance himself from her acts—by describing her as a mere acquaintance rather than as his wife. This is clearly relevant to the case, and the objection was correctly overruled.

Hartson also contends on appeal the evidence was inflammatory and thus inadmissible. No objection was made at trial on that basis, and this claim of error has therefore not been preserved for appellate review. *See* Tex.R.App. P. 33.1. The contention of error is overruled.

The judgment is affirmed.