Opinion issued December 6, 2007













Opinion issued December 6, 2007




 

 

 

 

 

 








 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NOS.          01-06-00316-CR;
01-06-317-CR;

01-06-00318-CR; & 01-06-00319-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



ROLAND RAMOS MACIAS, Appellant

 

V.

 

STATE OF TEXAS,
Appellee

 



On Appeal from the 149th District Court

Brazoria County, Texas

Trial Court Cause No. 49, 211




 
 
 
 
 
 
 


 



MEMORANDUM OPINION

 

After finding appellant Rolando Ramos
Macias guilty as charged on three counts of aggravated robbery and one count of
possession of a prohibited weapon, the jury assessed a sentence of two years
and six months’ imprisonment for possession of a 








prohibited weapon; ten years’
imprisonment, suspended for ten years’ community supervision, for each of the
three aggravated robbery counts; and a $2,500 fine for each of the four
counts.  Tex. Penal Code Ann. §§ 29.03 & 46.05(a)(3) (Vernon 1994).  In this appeal, Macias contends that: (1) the
trial court abused its discretion by denying his motion for mistrial following
the prosecutor’s impermissible attempt to impeach Macias with his post-arrest
silence; (2) the trial court abused its discretion in denying his motion for
continuance; and (3) the evidence is factually insufficient to support
conviction on the three aggravated robbery counts.  Finding no error, we affirm.

Background

          One
evening in March 2005, Macias and Miguel Salas left work and began riding
around in Salas’s van drinking beer. 
Salas telephoned his ex-wife, Lillian Jaramillo, several times during
the evening, threatening her that, among other things, he was coming to her
house.  

Lillian divorced Salas in 2002.  Since 2005, she had resided in a rental home
in a Pearland subdivision with her husband, Urvano Jaramillo, as well as her
two sons and daughter from her first marriage. 
Macias had never lived at that house.




During the evening, Salas drove to a
mechanic shop where he and Macias left the van and got into a large sedan.  Salas drove it to Lillian’s house.  They reached the house late that evening,
after riding around for several hours.  

          Close
to midnight that night, Lillian heard noises and looked outside.  She saw the sedan in front of the house with
the doors open.  She also saw two men
coming from the shed in the back yard. 
One was carrying two tire rims, and the other, whom she recognized as
Salas, had another rim and some tools. 
Lillian woke Urvano, and they ran out of the house and confronted Macias
and Salas.  Macias and Salas ignored the
Jaramillos’ demands that they explain what they were doing and continued
putting the rims and tools in the back of the sedan.  Macias also removed tools and equipment from
Urvano’s truck, which was standing in the driveway, and put them in the
car.  Meanwhile, Urvano, who had a heart
condition, began experiencing chest pains. 
At Lillian’s direction, he returned to the house and told Lillian’s
twenty-year-old son, Kenny, to go outside with his mother.  

          Both
of Lillian’s sons came out of the house. 
Kenny went immediately to the sedan and began removing the tools and
other things.  Macias then pulled a
shotgun out of the sedan and brandished it, warning everyone to get back, but
Kenny continued to remove items from the car.  
Macias cocked the gun and threatened them again to “get back or I’ll
blow you the f**k away.”  At this point,
Lillian and her sons retreated, but Macias continued to point the shotgun at
them.  

Afraid that Macias would shoot,
Lillian quietly instructed her eleven-year-old daughter, who was standing by
the front door of the house, to call 911. 
Then, after noticing that Salas and Macias were preoccupied with
urinating near the sidewalk, Lillian began walking backwards toward the
house.  When she reached the house, she
got the phone and spoke with the 911 dispatcher.  While Lillian was on the phone, Salas and
Macias got into the sedan and left. 
Lillian’s sons got into Urvano’s truck and tried to follow the
sedan.  Approximately ten minutes later,
the police located Salas and Macias in the car at a nearby gas station, took
them into custody, and notified the Jaramillos.   At the officers’ request, the Jaramillos
went to the gas station to assist in the investigation.  They also recovered the property Salas and
Macias had stolen.  

          Following
his arrest, Macias was indicted on three counts of aggravated robbery with a
deadly weapon, each relating to his actions toward Lillian, Urvano, and Kenny,
respectively, and one count of possession of a short-barreled firearm.  Before trial, in March 2006, Macias moved to
consolidate his case with Salas’s, claiming that, although Salas’s testimony
was essential to preserve Macias’s right to a fair trial, Salas’s attorney
would not allow him to testify in Macias’s proceeding.  Macias further requested that his trial be
continued to permit him to gather recently discovered evidence.  An affidavit executed by Salas accompanied
Macias’s motion.  In it, Salas averred
that believed that the property he took out of the Jaramillos’ shed was his
own, and that he asked Macias to get the gun from the car because he was scared
that Urvano and Kenny were going to kill him. 
The trial court denied both requests, and Macias’s case proceeded to
trial.

At trial, the complainants all
testified to essentially the same version of facts.  Macias testified in his own defense.  During his direct examination, Macias explained
that he was getting a ride home after work from Salas when Salas mentioned that
he “was going to his wife’s house to pick up something.”  According to Macias, Salas approached the
door of the house and knocked, but received no answer.  Macias testified he saw Salas go to the
backyard and retrieve some tire rims and a weed eater.  Macias stated that he thought that Salas
owned those items.  He also testified
that he brought out the gun only at Salas’s direction, after Lillian’s elder
son had threatened to kill Salas.  Macias
denied cocking the gun, denied saying anything more than “back off” to the
Jaramillos, denied having any beer that night, and denied urinating by the
sidewalk.  

Discussion

I.       Rulings on Motions for Mistrial
and Continuance

          A.      Standard
of review

We review
the trial court’s rulings on both the motion for mistrial and the motion for
continuance for an abuse of discretion.  Renteria v. State, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006)
(continuance); Hawkins v. State, 135 S.W.3d 72, 76–77 (Tex. Crim. App.
2004) (mistrial); see Tex. Code Crim. Proc. Ann. art. 29.06
(Vernon 2006) (sufficiency of a motion
for continuance shall be addressed to “sound discretion” of court and “shall
not be granted as matter of right”).  To
constitute an abuse of discretion, the trial court’s decision must fall outside
the zone of reasonable disagreement.  See Gallo v. State, No. AP-74900,
2007 WL 2781276, at *3 (Tex.
Crim. App. Sept. 26, 2007); Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1991) (op. on reh’g).

B.      Motion for mistrial

In his first issue, Macias asserts
that the trial court abused its discretion by denying his motion for mistrial,
which defense counsel sought during the State’s redirect examination of the
police officer who investigated the incident. 
During the State’s direct examination of the investigating officer, the
officer testified that, after Macias was in custody and had received his Miranda warnings, Macias voluntarily
conversed with the officer about the incident. 
In detailing that conversation, the officer recounted that, after Macias
denied having pointed the gun at the complainants, he asked Macias why four
people would give sworn statements that Macias was the person who pointed it at
them, and that Macias could not give him answer.  The officer further testified that Macias
then decided he no longer wanted to speak with the officer.  Defense counsel did not object to that line
of questioning, but pursued the following line of questioning on
cross-examination:

Q.      Now, relative to your
question to Mr. Macias as to why four people would give written statements that
he had pointed the shotgun, you said that he could not give an answer.  Is that what you – that’s what you just previously
testified to a few minutes ago; is that correct?

A.      Yes, sir.

Q.      Well, isn’t it more
accurate or more true and correct that he just didn’t say anything; is that
correct?

A.      No, sir.  What I remember, he just could not give me an
answer.

Q.      Well, what do you mean,
couldn’t?  When you asked the question,
did he say anything?

A.      No.

Q.      All right.  So, when you say – when you made the question
to him of well, why did four people make written statements that you were
pointing the shotgun, in response to that or after you made the question, the defendant,
Rolando Macias, he just simply didn’t say anything, right?

A.      Not – no, sir, he didn’t
give me an answer.

Q.      And he did not – he did
not utter any words; is that correct?

A.      Correct.

Q.      In fact, he was silent; is
that right?

A.      Yes, sir.

Q.      In fact, after that he
told you that he wanted an attorney; is that right?

A.      A few sentences later.

Q.      Okay.  All right. 
By the way, you don’t speak Spanish, do you?

A.      No sir, I don’t.

Q.      All right.  And after those few sentences, then the
interview was terminated; is that correct?

A.      Yes, sir.  

The next exchange, which Macias
claims as grounds for mistrial, occurred during the State’s redirect
examination:

Q.      Now, [Officer], when you
confronted [Macias] about the four people who gave statements saying that he
was the man holding the shotgun on those four people, Defendant’s counsel
alluded that he didn’t say anything.  How
did you receive the fact that he didn’t say anything?

A.      I’m going
to say normally when somebody has that type of response, they can’t come up
with an answer.

 

Q.      And during the
conversation that you had with the Defendant, did he – at any point during that
time, did you seem to have a failure to communicate?  Did he ever say he didn’t understand what you
were saying?

A.      Not
that I felt.

Q.      Did he ever say that he
was trying to protect anyone else on that night?

A.      Not
to me, no, sir.

Q.      Never said to you that he
was pulling a shotgun to protect Miguel, the codefendant, to you?

At this juncture, defense counsel
objected “to these questions” on the ground that they constituted a comment on
Macias’s right to remain silent.  The
trial court sustained the objection as to the unanswered question and agreed to
tell the jury to disregard the question, but denied Macias’s motion for
mistrial.  

A comment on the defendant’s post-arrest
silence
violates the defendant’s rights under the Fifth Amendment of the United States
Constitution and article I, section 10 of the Texas Constitution.  See Doyle v. Ohio, 426 U.S.
610, 618, 96 S. Ct. 2240, 2245 (1976); Dinkins
v. State, 894 S.W.2d 330,
356 (Tex. Crim. App. 1995).  When a
defendant takes the stand, however, he is subject to cross-examination and
impeachment like any other witness, except as limited by any overriding
constitutional or statutory prohibitions. 
Cisneros v. State, 692 S.W.2d
78, 83 (Tex. Crim. App. 1985); see
also Salazar v. State, 131 S.W.3d 210, 214 (Tex. App.—Fort Worth
2004, pet. ref’d) (“The State cannot improperly comment upon a defendant’s
post-arrest silence when he did not remain silent.”); Bell v. State, 867
S.W.2d 958, 962 (Tex. App.—Waco
1994, no pet.) (holding that defendant opened door to impeachment on his post-arrest silence by
attempting to shore up his defensive strategy through questions about his post-arrest statements
to police).

          Here,
we need not decide whether the testimony at issue constitutes proper
impeachment or improper comment on post-arrest silence because the defense
waived any error by failing to timely object. 
A defendant may waive a complaint of comment on post-arrest
silence by failing to timely and
properly object. Wheatfall v. State, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994); see Leday v. State, 983 S.W.2d 713, 718
(Tex. Crim. App. 1998)
(holding that trial court’s erroneous admission of evidence will
not require reversal when other such evidence was received without objection,
either before or after complained-of ruling); Salazar, 131 S.W.3d at 214 (same). 
The reporter’s record excerpts
demonstrate that, before the defense objected, a substantial amount of
testimony, including some elicited by the defense, dealt with the nature of
Macias’s lack of response to the officer’s question.  

Moreover, an instruction
to the jury to disregard generally suffices to cure any harm from an improper comment on appellant’s post-arrest silence. Dinkins,
894 S.W.2d at 355.  The trial court
agreed to tell the jury to disregard the objected-to question as requested by
the defense.  Considering the amount of
testimony on the issue already before the jury and the trial court’s agreement
to instruct the jury to disregard the question, the trial court did not abuse
its discretion in denying Macias’s motion for mistrial.

          C.      Motion for continuance

In his next issue, Macias complains
that the trial court abused its discretion by refusing to continue his trial
until after Salas had been tried so that Salas would not be required to waive
his right to remain silent to provide testimony exculpating Macias at Macias’s
trial.  

Macias filed two motions for
continuance.  The first claims that he
required a continuance to obtain further discovery from the State, and observes
that defense counsel had not located Salas’s divorce decree, which, according
to the motion, indicated that the property taken during the incident was
community property and, accordingly, that no theft occurred.   The second motion, filed approximately one
month later, seeks to consolidate Macias’s case with Salas’s case so that Salas
could provide testimony in support of Macias’s defense.  The motion observes that Salas’s attorney had
advised him not to testify so as to protect his Fifth Amendment right against
self-incrimination.  The motion asserts
that newly found evidence constitutes the basis for the continuance request,
but does not identify that evidence.  The
second motion, also unsworn, is accompanied by an affidavit executed by
Salas.  In it, Salas echoes Macias’s
version of the incident, declaring that Salas became frightened when Urvano and
Kenny approached him and called to Macias to help him by getting the gun, and
that Macias got the gun and told them to back off and not hurt Salas.  

During trial, Macias called Salas to
the stand to make a bill of exception. 
Salas refused to answer, invoking his Fifth Amendment right against
self-incrimination.[1]  Defense counsel made a proffer of the
questions he would direct toward and responses he anticipated from Salas, as
well as a copy of the affidavit from Salas previously filed with Macias’s
motion to consolidate.  

          The
trial court did not abuse its discretion in denying Macias’s motion for
continuance.  First, Macias’s motion for
continuance requests that his case be consolidated with Salas’s, not that Salas
be tried first.  Second, even assuming
that Salas would be tried before Macias, if Salas were convicted he would not
be free to testify without the fear of
self-incrimination until he had exhausted all rights to judicial review.   Third,
because Salas affirmatively invoked his Fifth Amendment rights, “it would be
mere speculation to conclude that the proposed testimony by the codefendant
would have been of such weight and believability as to influence the decision
of the jury.”  Williams v. State, 625 S.W.2d 769, 771 (Tex. App.—Houston [14th Dist.] 1981, pet.
ref’d).  At best, to the extent Salas’s
affidavit is any indication to what he would testify, his testimony would have
been cumulative of Macias’s. 
Accordingly, we overrule Macias’s second issue.

II.      Factual Sufficiency
Challenge

In his final issue, Macias contends
that the evidence is factually insufficient to support the jury’s findings of
guilt on the three counts of aggravated robbery.  In conducting a factual sufficiency review,
we view all of the evidence in a neutral light.  Ladd v.
State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).   The verdict will stand unless (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) it is against the great weight and preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  We cannot conclude
that the evidence is factually insufficient simply because we disagree with the
verdict.  Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Further, the fact finder, as the sole
determiner of a witness’s credibility, may choose to believe all, some, or none
of the testimony presented.  Cain v. State, 958 S.W.2d 404, 407 n.5
(Tex. Crim. App. 1997). 

In challenging the factual
sufficiency of the evidence of aggravated robbery, Macias specifically attacks
the sufficiency of the evidence supporting the jury’s findings that he
“committed theft of property” and “threatened or placed the complainant[s] in
fear of imminent bodily injury or death.” 
See Tex. Pen. Code Ann. §§ 29.02(a)(2), 29.03(a)(2), (3) (Vernon 1994).    

Macias acknowledges that the three
complainants all testified that he pulled a shotgun on them in the course of
taking their property from a shed. He nevertheless claims that his version of
events—that he believed Salas owned the property they took from the shed, and
that he was acting in Salas’s defense after Lillian’s older son had threatened
him—is “entirely reasonable and self-consistent.”  

Macias’s testimony at trial and prior
statements to law enforcement demonstrate otherwise.  They contain inconsistencies about several
issues, including (1) at what time he and Salas got off work and began driving
around; (2) whether a third co-worker had been in the car earlier in the
evening; (3) the location where they picked up Salas’s sedan; (3) whether he
drank any beer; and (4) whether he pointed the gun at the Jaramillos.  In contrast, as Macias concedes, the
complainants all testified to essentially the same version of facts, including
that Macias and Salas broke into the freestanding shed, and Macias pulled a gun
out when the residents discovered them taking items from the shed.  The jury was free to discredit Macias’s
testimony and believe the testimony of the complainants, which constitutes
factually sufficient evidence to support the verdict.  

Conclusion

 

          We
conclude that the trial court did not abuse its discretion in denying Macias’s
motions for mistrial and continuance.  We
also conclude that the evidence is factually sufficient to support the jury’s
findings of guilt on the three counts of aggravated robbery.  Finding no error, we affirm the judgment of
the trial court.

 

 

Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.

Do not publish.  See
Tex. R. App. P. 47.2(b).

 

 











[1] “A defendant may not require
a codefendant to testify if she has indicated she will
assert her privilege against self-incrimination under the Fifth Amendment to the United States
Constitution.”  Hartson v. State, 59 S.W.3d 780, 783 (Tex. App.—Texarkana 2001, no pet.)