Opinion filed August 1, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00074-CR

_____

## ARMANDO CASTILLO CAMPOS, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 220th District Court
### Comanche County, Texas
### Trial Court Cause No. CCCR-10-03300

## M E M O R A N D U M   O P I N I O N

The jury found Appellant guilty of aggravated sexual assault and indecency with a child by contact and assessed his punishment at confinement for ninety-nine years and twenty years, respectively. The trial court ordered the sentences to run consecutively. Appellant challenges his conviction in four issues. Appellant claims in his first two issues that the trial court abused its discretion when it denied his motion for continuance. He argues in his third issue that the trial court also

abused its discretion when it denied his motion for new trial without a hearing. In his final issue, Appellant contests the admission of extraneous offenses. We affirm.

## I. *Background Facts*

Law enforcement first learned of sexual assault allegations against Appellant in March 2006 when his stepdaughters, R.S. and A.S., made outcries of sexual abuse. Lieutenant Ed Dyson of the Comanche Police Department was called to Comanche Elementary School because A.S., a student at Comanche Elementary, reported that she had been sexually abused. Lieutenant Dyson contacted Child Protective Services (CPS) and asked them to interview A.S. and her older sister, R.S. Amanda Welch, a CPS supervisor, conducted a forensic interview with each of the girls. After R.S. and A.S. reported the sexual abuse, their mother, Maria Campos, told them not to say anything; she was afraid that CPS would take them from her. Neither R.S., age eleven at the time of the interview, nor A.S., who was in second grade at the time of the interview, was forthcoming.

Welch confronted Maria, and she admitted that she told her daughters not to tell Welch anything. After Maria told R.S. and A.S. to tell Welch the truth, Welch reinterviewed R.S. In the second interview with Welch, R.S. told her that Appellant touched her vagina and placed his fingers inside of her vagina and that he made her put her mouth on his penis.

After R.S. reported the sexual abuse and after the interviews, Maria, R.S., A.S., and their brother, E.C., moved out of Appellant's home. However, Maria admitted that she continued to have a physical relationship with Appellant. They began dating when R.S. was one year old and Maria was pregnant with A.S. Appellant and Maria were married for ten years when she divorced him in 2007. Maria further testified that, after the divorce, Appellant had visitation rights to E.C., his and Maria's son. She said that she felt it was important for E.C. to remain in contact with his father's family.

After a lengthy investigation, Appellant was charged in July 2010 and later indicted regarding allegations against both R.S. and A.S., but the State elected to proceed only with the charges involving R.S. Appellant was indicted on two counts of aggravated sexual assault of a child and one count of indecency with a child by contact.

At trial, before R.S. testified, the trial court held a hearing outside the presence of the jury to determine the admissibility of acts that involved both R.S. and A.S. Appellant objected, arguing any allegations of sexual assault against A.S. would be impermissible 404(b) evidence. *See* TEX. R. EVID. 404(b). The State responded that the evidence was same transaction contextual evidence. The trial court admitted the evidence, but limited it to "evidence concerning [A.S] as it relates to sexual assaults on [R.S.]."

In the presence of the jury, the State introduced evidence of sexual acts that occurred between R.S., A.S., and Appellant. R.S. testified that, on one occasion, they were all in the bathroom, and Appellant took turns "sticking his private area in [R.S.'s] and [A.S.'s] private areas." A.S. testified to one incident in the bedroom that she shared with R.S. A.S. testified that Appellant had R.S. remove her pants and sit on the bed. A.S. stated that, as Appellant sexually assaulted R.S., he made A.S. remove her pants and sit beside R.S. She further testified that Appellant "rubbed [his privates] against [hers]."

E.C. testified concerning two incidents that he observed. E.C. testified that on one of those occasions, he was unable to get into the bathroom. He peeked under the door and saw his father's feet and his sister's feet; he heard moaning. On another occasion, E.C. walked into his mother's room and saw that his father's pants were down and that one of his sisters was bent over. Although he was six years old at the time of the events, E.C. testified that he was "sure [it] wasn't [his]

mom" he observed with his father. He could not identify which sister was involved.

Dr. Jayme Coffman is a child abuse pediatrician and the medical director of the Child Abuse Program at Cook Children's Medical Center. Dr. Coffman testified that she examined R.S. and that R.S. told her that Appellant started sexually abusing her when she was eight years old, that the last time that he sexually assaulted her was about two months before the date of Dr. Coffman's examination, that the sexual assaults hurt her but there was never any blood, and that Appellant threatened her not to tell anyone. Dr. Coffman testified that the sexual assault examination was normal and that her diagnosis was sexual assault without trauma. The doctor explained that only 5% of sexually abused children exhibit any physical trauma.

## II. *Motion for Continuance*

Appellant challenges the trial court's denial of his motion for continuance on two grounds. He argues that the trial court abused its discretion when it denied his motion because he was denied (1) his right to a fair trial and (2) his right to present a defense. Although Appellant presents the arguments in two separate issues, we will address them together.

We review a trial court's denial of a motion for continuance under an abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *see* TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006) (criminal action may be continued upon sufficient cause shown); TEX. CODE CRIM. PROC. ANN. art. 29.06(6) (West 2006) (sufficiency of a motion for continuance is addressed to the sound discretion of the trial court and shall not be granted as a matter of right). For Appellant to establish an abuse of discretion, he must show (1) that the trial court erred when it denied his motion and (2) that he was harmed by the denial of a continuance. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

4

The first prong "requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* The second prong requires a defendant to demonstrate actual prejudice to his defense that resulted from the trial court's ruling. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995). An appellant must demonstrate "with considerable specificity how [he] was harmed by the absence of more preparation time than he actually had," and this generally occurs at the hearing. *Gonzales*, 304 S.W.3d at 842–43.

Appellant claims that the trial court's denial of his continuance denied him his right to a fair trial and his right to present a defense and that the denial harmed him because counsel was not allowed time to investigate potential witnesses. The State responds that the information sought in the motion for continuance would serve only to impeach the credibility of the complainant and that defense counsel did not lay the predicate for such impeachment evidence during its cross-examination of either R.S. or A.S.

When a defendant's motion for continuance is based on an absent witness, the motion must show (1) the name of the witness and, if known, his residence; (2) that the defendant has exercised diligence to procure the witness's attendance; (3) that the witness is not absent by procurement or consent of the defense; (4) that the motion is not made for delay; (5) the facts expected to be proved by the witness; and (6) there is no reasonable expectation that attendance of the witness can be secured by a postponement of the trial to some future date during the present term of the trial court. TEX. CODE CRIM. PROC. ANN. art. 29.06 (West 2006). The facts expected to be proved by the absent witness must be material, and the motion for continuance must show the materiality of the witness's

testimony; mere conclusions and general averments of materiality are insufficient. *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005). In addition, a trial court is not required to delay a case where the request for a continuance centers on witnesses who may provide impeachment testimony. *Stanley v. State*, 137 S.W.2d 34 (Tex. Crim. App. 1940). A continuance is not ordinarily granted to allow defendant to secure evidence to impeach a witness who is expected to testify. *Stiles v. State*, 141 S.W.2d 327 (Tex. Crim. App. 1940).

Appellant moved for continuance on the morning that the trial was set to begin. He alleged that, five days prior to trial, Appellant's sister-in-law advised Appellant's counsel that the high school Spanish teacher, Rosio Hernandez, overheard R.S. telling classmates that the allegations against Appellant were untrue. Appellant's counsel explained that he had contacted Hernandez and that Hernandez confirmed what she had overheard. However, she directed counsel to the principal regarding a release of the names. When counsel contacted the principal, the principal directed counsel back to Hernandez. Counsel then hired Trace Hendricks, a private investigator, to get the names of the students to whom R.S. had allegedly made the statements and to take statements from them.

Hendricks took a statement from Hernandez the next morning, but Hendricks was admitted to the hospital during the lunch hour and did not get the students' names or their statements that he was scheduled to take that afternoon. At approximately 3:30 p.m. on the Friday afternoon before the trial was to begin on Monday morning, Appellant's counsel learned that Hendricks had been hospitalized and that Hendricks had failed to identify the students involved and to get their statements.

Before trial commenced, Appellant's attorney argued that the information in question was potentially exculpatory, and he requested a continuance so that he could properly investigate. Appellant's counsel admitted that he had neither

spoken to nor secured the names from Hernandez and that he had not subpoenaed Hernandez. The prosecutor responded that there was nothing to indicate that the potential evidence was substantive and that the potential evidence involved only a hearsay allegation that someone may have impeachment evidence. The trial court denied the motion and stated that it understood the request to be based on the illness of the investigator, not counsel's inability to call witnesses.

In *Campbell v. State*, No. 01-01-01057-CR, 2002 WL 31941499 (Tex. App.—Houston [1st Dist.] Dec. 27, 2002, pet. ref'd) (not designated for publication), the court held that the trial court did not abuse its discretion when it denied a motion for continuance where defense counsel knew of potential witnesses but could not locate the witnesses and asked for a continuance to pursue the information. *Campbell*, 2002 WL 31941499, at *2. Similarly, in *Hartson v. State*, the court determined that the trial court did not abuse its discretion when it denied the defendant's motion for continuance based on an absent witness. 59 S.W.3d 780 (Tex. App.—Texarkana 2001, no pet.). In that case, the defendant failed to provide a supporting affidavit by the absent witness or some other sworn evidence that the absent witness would testify to exculpatory facts.

Appellant knew of the possibility that there were potential witnesses but he could not provide names, had not issued subpoenas, and could only guess at the materiality of the potential witnesses' testimony. Appellant also provided no affidavits to support his contention and provided no evidence that the witnesses were willing to testify or that they could offer any beneficial testimony if they testified. Appellant also did not subpoena Hernandez to attest to the information sought by a continuance. Mere assertions, without more, cannot justify a continuance. *Harrison*, 187 S.W.3d at 434.

Moreover, a trial court does not abuse its discretion when it denies a continuance to secure impeachment testimony. *Keel v. State*, 434 S.W.2d 687, 689

(Tex. Crim. App. 1968). R.S. admitted that she denied all sexual abuse to anyone at school; her mother testified that she told R.S. to lie about it; and A.S. testified that her mother instructed them to lie. R.S. could not be impeached when she admitted denying the allegations; the potential witnesses' testimony would not have been admissible. We overrule Appellant's first and second issues.

### III. *Motion for New Trial*

Appellant's third issue is that the trial court erred when it denied his motion for new trial without a hearing. Appellant's sentence was imposed in open court on February 16, 2011. Sixteen days later, Appellant's attorney filed a motion for new trial with the Comanche County District Clerk. A "Certificate of Presentment," signed by Appellant's attorney, was attached to the motion. In the certificate, Appellant's attorney certified that he had hand-delivered the motion to the trial court. Appellant also attached to the motion an "Order for a Setting." The order contained blanks for the court to fill in the hearing date and time; there was also a signature line for the trial court's signature. The record on appeal shows that the blanks for the hearing date and time have not been filled in and the signature line for the trial court's signature remains blank.

To preserve error by way of a motion for new trial, it must be presented to the trial court. *See* TEX. R. APP. P. 21.6; *Thompson v. State*, 243 S.W.3d 774, 776 (Tex. App.—Fort Worth 2007, pet. ref'd). Presentment means that the appellant has given the trial court actual notice that he wants the trial court to hold an evidentiary hearing and rule on the motion. *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998). An appellant must show that the motion was actually delivered to the trial court or otherwise brought to its attention or actual notice. *Thompson*, 243 S.W.3d at 776. Although Appellant moved for a new trial, there is nothing in the record to show that he presented it to the trial court.

Appellant did not show actual notice to the trial court because the "Certificate of Presentment" showed only that the motion was hand-delivered to the trial court's office. Such a certificate of presentment cannot show presentment under the rule. *See Hiatt v. State*, 319 S.W.3d 115, 122 (Tex. App.—San Antonio 2010, pet. ref'd); *Owens v. State*, 832 S.W.2d 109, 111 (Tex. App.—Dallas 1992, no pet.). This is the case even when it is certified in the presentment certificate that the motion was presented to the trial court. *Hiatt*, 319 S.W.3d at 122; *Owens*, 832 S.W.2d at 111. Because this record does not show that Appellant ever presented a motion for new trial that included a request for a hearing and because there is no showing that such a request was ever brought to the attention of the trial court, we hold that the trial court did not err by failing to hold a hearing on Appellant's motion for new trial. *Rozell v. State*, 176 S.W.3d 228, 231 (Tex. Crim. App. 2005). We overrule Appellant's third issue.

IV. *Extraneous Offense Evidence*

Appellant asserts in his final issue that the trial court erred when it admitted evidence of extraneous offenses committed against A.S. Appellant contends that the trial court erred because (1) the sole purpose of the testimony proved propensity, (2) the alleged offenses against A.S. were not so intertwined as to be inseparable from the offenses against R.S., and (3) the testimony was unnecessary to the State's case. Appellant also argues that A.S.'s testimony was unfairly prejudicial. Prior to R.S. taking the stand, the trial court held a hearing outside the presence of the jury to determine the admissibility of extraneous offenses committed against A.S. The trial court ruled the extraneous offense evidence was admissible as "same transaction contextual evidence," but limited it to those sexual assaults on A.S. that were contextually related to the sexual assaults against R.S.

*A. Standard of Review*

We review a trial court's decision to admit or exclude extraneous offense evidence for an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will affirm a trial court's ruling that an extraneous offense has relevance apart from proving conformity with the defendant's character if the ruling is within the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)). Likewise, we give deference to a trial court's determination that the probative value of the evidence is not outweighed by the danger of unfair prejudice. *Id.*

*B. Same Transaction Contextual Evidence*

Appellant contends that the extraneous offense evidence only establishes his propensity as a sex offender and that, therefore, the trial court should have excluded it. A defendant may not be tried for a collateral crime or for being a criminal generally, and Rule 404(b) prohibits the admission of extraneous offenses to prove a defendant's character or to show that the defendant acted in conformity with that character. TEX. R. EVID. 404(b). But extraneous offenses may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b). This list of exceptions to the general rule is "neither mutually exclusive nor collectively exhaustive." *Montgomery*, 810 S.W.2d at 388. Extraneous offense evidence may also be admissible for purposes other than those expressly listed in Rule 404(b). Such evidence may be admissible as same transaction contextual evidence, which has been defined as evidence of other offenses connected with the offense charged. *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000); *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); *Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

*1. Relevance from Context*

Same transaction contextual evidence may be admissible where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others." *Rogers*, 853 S.W.2d at 33. "[I]t has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). But same transaction contextual evidence is admissible under Rule 404(b) only if it is necessary to the jury's understanding of the charged offense, such as when the charged offense would make little or no sense without it. *Wyatt*, 23 S.W.3d at 25; *Swarb*, 125 S.W.3d at 681. The purpose of admitting extraneous offense evidence as same transaction contextual evidence is to place the instant offense in context. *Nguyen v. State*, 177 S.W.3d 659, 667 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). In *Jannise v. State*, 789 S.W.2d 623, 628 (Tex. App.—Beaumont 1990, pet. ref'd), the court held that sexual assaults of two girls in the same room over a two to three day period during a Thanksgiving holiday were admissible to show a fairly complete narrative of the contemporaneous assault on the complainant. *Jannise*, 789 S.W.2d at 628.

The facts and circumstances surrounding the commission of an offense are relevant and necessary for the jury to have a complete picture of what occurred. *Burks v. State*, 876 S.W.2d 877, 900 (Tex. Crim. App. 1994); *Mayes v. State*, 816 S.W.2d 79, 85 (Tex. Crim. App. 1991). Here, the sexual assaults involving A.S. were so intertwined with those against R.S. that the jury's understanding of the offenses would have been obscured without them. R.S. could not fully testify to the sexual assaults against her without mentioning that her younger sister, A.S.,

was also present.  Nor could A.S. testify to personal knowledge of sexual assaults on R.S. without also testifying to assaults committed against her at the same time.

### 2. Remoteness and Balancing Tests

Remoteness is another factor that affects admissibility.  The extraneous conduct may not be too remote from the charged offense without affecting whether the probative value is substantially outweighed by the danger of unfair prejudice. *See Reyes v. State*, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi 2002, pet. ref'd); *Corley v. State*, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, no pet.). However, remoteness is not an issue where the extraneous offense occurred contemporaneously with the charged offense.  In addition to the requirements of Rule 404(b), extraneous offense evidence must also satisfy the balancing test of Tex. R. Evid. 403.  *Nguyen*, 177 S.W.3d at 668; *Swarb*, 125 S.W.3d at 681.

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  A Rule 403 analysis by the trial court should include, but is not limited to, the following considerations: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, indelible way; (3) the time needed by the proponent to develop the evidence; and (4) the proponent's need for the evidence.  *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).  Although a trial court must still perform a balancing test to determine whether the probative value of same transaction contextual evidence is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders it inadmissible, as long as it sets the stage for the jury's comprehension of the whole criminal transaction. *Swarb*, 125 S.W.3d at 681.

Here, evidence of sexual assaults against A.S., through testimony from A.S., R.S., and E.C., was helpful to the jury's understanding of the instant offenses because it was so intertwined with the charged offenses.  The evidence of offenses

12

against A.S provided the jury with a context for the offenses against R.S. We conclude that the prejudicial effect of the extraneous offense evidence did not substantially outweigh its probative value. Only limited details surrounding A.S. were introduced in the State's case-in-chief. E.C. was unable to identify which sister was involved in the two incidents that he observed. R.S. testified to one incident in the bathroom with Appellant when A.S was present. Likewise, A.S. testified to one sexual assault between Appellant and R.S. in her bedroom; her testimony provided context to the jury regarding the assaults against R.S.

The extraneous offense evidence was necessary to provide context for the assaults against R.S. and to rebut the defensive theory of fabrication. "[S]ame transaction contextual evidence is admissible 'not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged.'" *Milner v. State*, 263 S.W.3d 353, 358 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

### C. Rebuttal of Appellant's Fabrication Theory

The admission of the sexual assault evidence also rebutted the defensive theory of fabrication. Rebuttal of a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses*, 105 S.W.3d at 626. In opening statements, Appellant suggested that R.S. fabricated the allegations because she resented him for being strict and making her do chores. Additionally, in cross-examination of the State's witnesses, as well as in closing arguments, Appellant raised the theory that R.S. fabricated her allegations, either out of ill will toward Appellant or at her mother's prompting.

During his closing arguments, Appellant stated, "[T]hey [R.S. and A.S.] were liars," and "[T]here's not proof [R.S.'s] virginity was gone." Appellant suggested that R.S. and A.S. fabricated the allegations because they did not like Appellant whipping them, making them do chores, or fighting with their mother or that they fabricated the allegations at the prompting of their mother who was bitter

that Appellant had moved on to a new wife and kids.  Appellant also stated that it was Appellant's word against R.S.'s and that it was "impossible" and "preposterous" to "have vaginal sex hundreds of times and not rupture the hymen."

Additionally, although Appellant's cross-examination of R.S. involved general impeachment of R.S. with prior inconsistent statements, some cross-examination tended to raise the fabrication theory.  Defense counsel elicited testimony from R.S. that Appellant was strict on discipline and that only the girls, R.S. and A.S., had to do chores.  When Appellant's counsel cross-examined Maria, he brought out that Maria continued to have a relationship with Appellant after R.S. and A.S. made the accusations that he had sexually assaulted them and that she allowed Appellant visitation with their son, E.C.

To be admissible for rebuttal of a fabrication defense, "the extraneous misconduct must be at least similar to the charged one."  *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002).  The requisite degree of similarity is not exacting, and the extraneous conduct need only be sufficiently similar to the charged offense.  *Dennis v. State*, 178 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).  Here, the extraneous offense is sufficiently similar to the charged offense.  Both R.S. and A.S. were Appellant's stepdaughters; both were under fourteen years of age when Appellant sexually assaulted them; Appellant threatened both of them; and he abused both of them for several years.  *See Galvez v. State,* No. 10-06-00332-CR, 2009 WL 2476600, at *3 (Tex. App.—Waco Aug. 12, 2009, pet. ref'd) (not designated for publication); *Blackwell v. State*, 193 S.W.3d 1, 14–15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Dennis*, 178 S.W.3d at 179.  We overrule Appellant's final issue on appeal.

V. *This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


August 1, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.